IN RE: BABY GIRL DOCKERY, A MINOR CHILD

No. COA97-359

(Filed 17 February 1998)

## 1. Adoption or Placement for Adoption § 30 (NCI4th)— illegitimate child—consent—by putative father—statute not gender discrimination—equal protection standard

The statute requiring the putative father of an illegitimate child to do one of the acts specified in the statute in order to establish a right to the requirement of his consent to adoption of the child, former N.C.G.S. § 48-6(a)(3), does not discriminate against similarly situated individuals on the basis of gender since the putative father has only a biological link to the child, and the mother has not only a biological link to the child but has also provided parental support for the child throughout the pregnancy and birth. Therefore, the constitutionality of the statute under the Equal Protection Clause should be decided under the standard of whether the distinction between the mother and putative father is rationally related to the achievement of a legitimate state interest.

## 2. Adoption or Placement for Adoption § 30 (NCI4th)— illegitimate child—consent by putative father—statute not violative of equal protection

The statute requiring the putative father of an illegitimate child to do one of the acts specified in the statute in order to establish a right to the requirement of his consent to adoption of the child provides a reasonable means of addressing the legitimate state concern that only those persons who have, in addition to a biological link, a parental relationship of care and provision for a minor child be afforded the right to the requirement of consent before his or her parental rights are severed by such child's

adoption, and the statute thus does not violate the equal protection rights of the putative father. Former N.C.G.S. § 48-6(a)(3).

**3. Adoption or Placement for Adoption § 30 (NCI4th)— illegitimate child—consent by putative father— statute not violative of due process**

The statute requiring the putative father of an illegitimate child to do one of the acts specified in the statute in order to establish a right to the requirement of his consent to adoption of the child bears a rational relationship to a legitimate state goal and thus did not violate a putative father's right to substantive due process.

Appeal by respondent from order entered 17 January 1997 by Judge Steven J. Bryant in Cherokee County District Court. Heard in the Court of Appeals 30 October 1997.

*Joseph M. Collins, P.A., by Joseph M. Collins, for petitioner-appellees.*

*Collins, Blomeley & Woody, PLLC, by James L. Blomeley, Jr., for respondent-appellant.*

MARTIN, John C., Judge.

In early 1995, Jennifer Dockery and respondent Rick Barmore dated briefly and, in the course of that relationship, engaged in sexual relations, as a result of which Ms. Dockery became pregnant. After they ceased dating, they had no further communications and Ms. Dockery did not inform Mr. Barmore of her pregnancy. The minor child was born on 14 September 1995 in Sylva, Jackson County, North Carolina. Ms. Dockery had arranged for the child to be adopted and the child was placed with the adopting parents on 16 September 1995. Shortly thereafter, Mr. Barmore was contacted by the attorney representing the adopting parents and was requested to execute a document consenting to the child's adoption. Mr. Barmore declined to consent.

On 25 October 1995, the adopting parents filed this adoption proceeding in Macon County alleging, *inter alia*, that the consent of the child's father was not required because he had not acknowledged paternity, had not legitimated the child in accordance with G.S. § 49-10, and had not provided financial support or consistent care with respect to the child and mother. On 31 October 1995, Mr.

Barmore, unaware of the pending adoption proceeding, filed an action in Cherokee County seeking to establish his paternity of the child and requesting custody.

On 7 November 1995, Mr. Barmore moved to intervene in this proceeding and to consolidate it with the Cherokee County action. The record does not reflect that any action was taken on the motion to consolidate. On 14 May 1996, Judge Bryant, acting in the Cherokee County action, entered a judgment declaring Mr. Barmore the biological father of the minor child.

On 17 January 1997, Judge Bryant entered an order in this proceeding in which he incorporated the findings and conclusions contained in the Cherokee County judgment and further found, upon stipulated facts, that at the time the adoption proceeding was filed Mr. Barmore had neither acknowledged paternity of the child by affidavit nor established paternity judicially, had not filed a petition for legitimation of the child in accordance with G.S. § 49-10, and had not provided consistent care or financial support to the child and mother. Judge Bryant concluded that Mr. Barmore was not entitled to intervene in the adoption proceeding, that his consent to adoption was not required, and that further proceedings in the Cherokee County action were moot. Mr. Barmore's motion to intervene in the adoption proceeding was denied and the Cherokee County legitimation and custody action was dismissed. Mr. Barmore gave notice of appeal. The trial court stayed further proceedings in the adoption proceeding pending resolution of the appeal.

---

[1],[2] The argument in support of respondent-appellant's assignments of error raises the single issue of whether former G.S. § 48-6(a)(3), applicable to this case[1], violates his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. The provisions of G.S. § 48-6(a) pertinent to this case are:

(3) In the case of a child born out of wedlock the consent of the putative father shall not be required unless prior to the filing of the adoption petition:

---

1. Chapter 48 of the general Statutes was revised by Session Laws 1995, c 457, effective 1 July 1996. Adoption proceedings filed prior to and still pending on 1 July 1996 are governed by Chapter 48 as in effect immediately prior to that date. Session Law 1995, c 457, s 12. G.S. § 48-3-601 defines those persons whose consent is required in adoption proceedings filed on and after 1 July 1996.

(a) Paternity has been judicially established or acknowledged by affidavit . . ., or

(b) The child has been legitimated either by marriage to the mother or in accordance with provisions of G.S. 49-10, a petition for legitimation has been filed; or

(c) The putative father has provided substantial financial support or consistent care with respect to the child and the mother.

N.C. Gen. Stat. § 48-6(a)(3) (1984).

Respondent-appellant contends application of the statute results in an impermissible gender-based distinction between mothers of illegitimate children and fathers of illegitimate children because the requirement that the mother consent to adoption is not dependent upon her taking the steps required of the putative father by G.S. § 48-6(a)(3). In support of his argument, respondent-appellant relies upon the decision of the United States Supreme Court in *Caban v. Mohammed*, 441 U.S. 380, 60 L.Ed.2d 297 (1979). In *Caban*, the Court struck down, as impermissible gender-based discrimination, a New York statute which provided that the unwed mother of an illegitimate child could prevent the adoption of her child by withholding consent, but gave no similar right to the putative father. The putative father had provided care and support to the child, establishing not only the biological connection to the child, but also a parental relationship of care and support. The Court held, under such circumstances, that the mother and father were similarly situated individuals who were treated differently only because of their gender and that the state could not demonstrate that such disparate treatment was substantially related to the achievement of important governmental interests. *Id.*

*Caban* is distinguishable. First, respondent-appellant has provided no care or support to the child, though his failure to do so was admittedly unintentional and due to his lack of knowledge of the minor child's existence. More importantly, the statute in *Caban* provided no means by which the putative father could establish a right to the requirement of his consent to the adoption. The distinctions are critical. G.S. § 48-6(a)(3) provides a means by which a putative father may establish that right, i.e., by doing one of the acts specified in the statute. Until he does so, the father has only a biological link to the child, and, thus, is not similarly situated to the mother, who has not

IN RE BABY GIRL DOCKERY

[128 N.C. App. 631 (1998)]

only a biological link to the child but has also provided parental care and support for the child throughout the pregnancy and birth. *See Lehr v. Robertson,* 463 U.S. 248, 260, 77 L.Ed.2d 614, 626 (1983) ("(p)arental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring."). Upon doing one of the acts specified by the statute, the putative father can also establish his obligation of parental care and support, beyond the mere biological link to the child, and become similarly situated to the mother. He is then granted the same right to the requirement of his consent to adoption. Thus, we believe the statute actually provides a means of identifying persons who are similarly situated with respect to the child and gives them similar rights, rather than making simply a gender-based distinction. *See Lehr, supra.* Hence, we hold that G.S. § 48-6(a)(3) does not discriminate against similarly situated individuals on the basis of gender.

Because the statute does not distinguish between the rights of mothers and fathers of illegitimate children solely on the basis of gender, its constitutionality under the Equal Protection Clause should be analyzed under the standard of whether the distinction is rationally related to the achievement of a legitimate state interest. *U. S. R. R. Retirement Board v. Fritz,* 449 U.S. 166, 66 L.Ed.2d 368 (1980), *reh'g denied,* 450 U.S. 960, 67 L.E.2d 385; *State ex rel. Util. Comm'n v. Carolina Util. Cust. Ass'n,* 336 N.C. 657, 446 S.E.2d 332 (1994). We hold the statute provides a reasonable means of addressing the legitimate state concern that only those persons who have, in addition to a biological link, a parental relationship of care and provision for a minor child be afforded the right to the requirement of consent before his or her parental rights are severed by such child's adoption.

[3]  Respondent-appellant also contends that application of G.S. § 48-6(a)(3) to this case violates his rights to due process guaranteed by the Fourteenth Amendment. Although respondent-appellant does not clearly denote whether he contends his procedural due process rights or his substantive due process rights have been violated, he appears to argue a violation of substantive due process.

The first step in a substantive due process analysis is to determine what individual right is affected by a disputed statute. The nature of the right will determine how much constitutional protection it will be given and, accordingly, the level of scrutiny which should be applied to the legislation. The link between a parent and child is a fundamental right worthy of the highest degree of scrutiny, but, as we

**IN RE BABY GIRL DOCKERY**

[128 N.C. App. 631 (1998)]

have already noted, a mere biological link alone is not equivalent to a meaningful parent-child relationship. *Lehr, supra.* In *Lehr*, the Court quoted with approval Justice Stewart's dissent in *Caban* to note that "the absence of a legal tie with the mother may in such circumstances appropriately place a limit on whatever substantive constitutional claims might otherwise exist by virtue of the father's actual relationship with the children." *Lehr v. Robertson*, 463 U.S. 248, 260 n.16, 77 L.Ed.2d 614, 626 n.16 (1983) (quoting *Caban v. Mohammed*, 441 U.S. 380, 60 L.Ed.2d 297 (1979) (Stewart, J., dissenting)); *Michael H. v. Gerald D.*, 491 U.S. 110, 105 L.Ed.2d 91 (1989). The court went on to hold:

> When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the due process clause. At that point, it may be said that he "act[s] as a father toward his children." But the mere existence of a biological link does not merit equivalent constitutional protection (citations omitted).

*Lehr*, at 261, 77 L.Ed.2d at 626. Thus, respondent-appellant is not entitled to application of the heightened level of scrutiny in this case; rather the statute must only bear a rational relationship to a legitimate state goal. *Richardson v. N.C. Dept. of Correction*, 345 N.C. 128, 478 S.E.2d 501 (1996). Applying such an analysis here, we hold respondent-appellant's due process rights with respect to the minor child were not violated by North Carolina's statutory scheme for legitimation support or adoption of illegitimate children in place at the time.

Affirmed.

Judges JOHN and SMITH concur.