IN RE: THE ADOPTION OF BABY GIRL ANDERSON

No. COA03-651

(Filed 20 July 2004)

**1. Appeal and Error— appealability—ability to withhold consent to adoption—substantial right**

A court's determination as to whether a putative father has sufficiently protected his ability to withhold consent for the adoption of his child is a substantial right pursuant to N.C.G.S. § 1-277(a) and therefore is subject to immediate appellate review when the right is affected by an order or judgment.

**2. Adoption— father's right to withhold consent—support requirement**

The trial court erred in holding that a child could be adopted without the consent of his father where the father admitted paternity but the court held that he had not met the support requirement of N.C.G.S. § 48-3-601(2)(b)(4)(II). Respondent made available actual and tangible support which would clearly meet the spirit and intent of the consent statute; the mother's choice to rebuff those offers should not affect their legal implications.

Judge LEVINSON concurring.

Appeal by respondent from order entered 7 March 2003 by Judge Alice C. Stubbs in Wake County District Court. Heard in the Court of Appeals 1 March 2004.

*Herring, McBennett, Mills & Finkelstein, P.L.L.C., by Bobby D. Mills, E. Parker Herring, and Stephen W. Petersen, for petitioner appellee.*

*Manning, Fulton, Skinner, P.A., by Michael S. Harrell, for respondent appellant.*

McCULLOUGH, Judge.

Respondent appellant Michael Avery received notice dated 10 January 2003 from Kristine Anderson, that Ms. Anderson had filed an adoption petition seeking to have her and Mr. Avery's daughter, N.A., adopted. N.A. was born 6 January 2003. The adoptive applicants, petitioner appellees, on 10 January 2003 moved to have the Wake County Clerk of Court issue an order determining whether the consent of Mr.

Avery to the proposed adoptive placement was required. On 16 January 2003, Mr. Avery filed an opposition to the proposed adoption. The Wake County Clerk of Court found that his consent was not required. Mr. Avery appealed as a matter of right for a trial *de novo* in the district court on the issue of whether his consent is required. In an order dated 7 March 2003, the trial judge found that Mr. Avery's consent for adoption was not required. This order is now on appeal.

At the time of the district court March 2003 order, Mr. Avery worked at the International House of Pancakes (IHOP). He had dropped out of Northside High School in Onslow County on or around 18 September 2002. Before working at IHOP, he had worked at a number of jobs: Food Lion, Little Caesar's, for a home repairman, and at a Citgo gas station. At the time of this same order, Ms. Anderson was a senior at Northside High School, academically strong, and had been admitted to three colleges.

The order was borne out of the following evidence and facts: Mr. Avery and Ms. Anderson began a monogamous relationship in the fall of 2001. They had unprotected sexual intercourse resulting in Ms. Anderson's pregnancy in the spring of 2002. Mr. Avery learned of the pregnancy in June or July of 2002, and paternity has never been disputed. In early September of 2002, Ms. Anderson informed Mr. Avery that she wanted to put the child up for adoption. Initially, Mr. Avery consented to the adoption. He then withdrew his consent after discussing the issue with his parents.

During Ms. Anderson's pregnancy, Mr. Avery resided with his parents who paid for his food, clothing, shelter, and utilities. Mr. Avery acknowledges that he never transferred any tangible or actual financial support to Ms. Anderson during her pregnancy. He further acknowledged he purchased a car in the amount of $1,000.00 for himself during her last full month of pregnancy.

There was evidence at trial that sometime during the late summer of 2002, Mr. Avery's mother told Ms. Anderson that she would be welcome to come stay in their home. This offer was not accepted. Mr. Avery testified, as did four witnesses, that he offered Ms. Anderson money at school in the range of three to eight times during the months of September, October, and November of 2002. Ms. Anderson testified that he never offered her money at school. In December of 2002, Mr. Avery and his sister drove to Ms. Anderson's residence, where he attempted to deliver an envelope containing a letter and a check in the amount of $100.00. Ms. Anderson's father answered

IN RE ADOPTION OF ANDERSON

[165 N.C. App. 413 (2004)]

the door and refused to accept the envelope. On 22 December 2002, Mr. Avery's attorney sent a letter to Ms. Anderson in which Mr. Avery acknowledged paternity, offered financial assistance to Ms. Anderson and the baby, and gave notice that he was not willing to consent to adoption.

N.A. was born on 6 January 2003. Mr. Avery attempted to see the mother and baby in the hospital, but was unable to do so because he was not an approved visitor. The adoptive applicants have had physical custody of the baby since on or about 14 January 2003.

In his appeal from the district court order holding that his consent was not required for the adoption of his child, Mr. Avery raises three issues: first, the trial court erred as a matter of law in finding that Mr. Avery did not satisfy the "payment" prong of N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II) (2003), the putative father consent statute; second, the trial court's construction of the applicable statutory and case law violated Mr. Avery's rights to due process and equal protection; and lastly, the trial court erred as a matter of law in failing to consider whether or not adoption was in the child's best interest as required by law.

**[1]** Before addressing the merits of these issues, we note our jurisdiction to take this appeal. Though there are still legal proceedings left in the adoption of N.A., this Court and our Supreme Court have addressed the merits of trial court orders concerning a putative father's consent. *See In Re Baby Girl Dockery*, 128 N.C. App. 631, 495 S.E.2d 417 (1988); *In re Adoption of Byrd*, 137 N.C. App. 623, 529 S.E.2d 465 (2000), *aff'd sub nom. In re Adoption of Byrd*, 354 N.C. 188, 552 S.E.2d 142 (2001). We read *Dockery* and *Byrd* as assuming, *sub silencio*, that a court's determination as to whether a putative father has sufficiently protected his ability to withhold consent for the adoption of his child is a substantial right pursuant to N.C. Gen. Stat. § 1-277(a) (2003) and therefore capable of appellate review when the right is affected by order or judgment. We have recently held as such in *In re Adoption of Shuler*, —— N.C. App. ——, 590 S.E.2d 458, 460 (2004).

## Providing Support Payments

**[2]** Mr. Avery's first assignment of error relates to the trial court's application of N.C. Gen. Stat. § 48-3-601 (2003), the consent statute, and our Supreme Court's holding in *Byrd*. Mr. Avery contends that he has met the statutory trigger for his consent to be required before his

child can be adopted, and that the facts of this case meet *Byrd's* interpretation of the statutory trigger and are distinguishable from the facts in *Byrd.*

The consent statute states in relevant part,

Unless consent is not required under G.S. 48-3-603, a petition to adopt a minor may be granted only if consent to the adoption has been executed by:

****

(4) Before the earlier of the filing of the petition or the date of a hearing under G.S. 48-2-206, has acknowledged his paternity of the minor and

****

II. Has provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support, and has regularly visited or communicated, or attempted to visit or communicate with the biological mother during or after the term of pregnancy, or with the minor, or with both[.]

N.C. Gen. Stat. § 48-3-601 (2003). In *Byrd,* our Supreme Court construed this statute to require three courses of action by the putative father before his consent would be necessary for any adoption of his child: (1) he must acknowledge paternity, (2) he must regularly communicate with mother and/or child, and (3) he must make reasonable and consistent support payments for mother or child in accordance with his financial means. *Byrd,* 354 N.C. at 193, 552 S.E.2d at 146. The trial court concluded as a matter of law that Mr. Avery "has met the requirements that he acknowledge paternity and communicate with Ms. Anderson." This was not cross-assigned as error by the adoptive applicants, and it is therefore not before us on review.

The single question then becomes whether Mr. Avery met the support payment requirement as contemplated in N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II) and as interpreted in *Byrd.* In *Byrd,* the Supreme Court stated:

The "support" required under N.C.G.S. § 48-3-601(2)(b)(4)(II) is not specifically defined. We believe, however, that "support" is best understood within the context of the statute as actual, real and tangible support, and that attempts or offers of support do not suffice. Statutory language supports this conclusion. While "attempted" communication satisfies the statute, there is no such language used to describe the support requirement. N.C.G.S. § 48-3-601(2)(b)(4)(II). Presumably, the General Assembly intended a different meaning for the support prong of the test because of the differing language—one that excludes attempt to provide support. The statute also states that support may include "the *payment* of medical expenses, living expenses, or other *tangible means of support*," thus reflecting actual support provided.

*Byrd*, 354 N.C. at 196, 552 S.E.2d at 148 (emphasis in original). In *Byrd*, the putative father was found to have the financial means to make support payments. The Court also found he never used these means to provide *tangible support* to the mother or unborn child at any time during the relevant period before the filing of the adoption petition. *Id.* The Court made this finding despite the following evidence: the putative father allegedly saved money for the child; the biological mother stayed at his grandparents' home on at least one occasion; his mother offered the biological mother housing throughout the pregnancy; and on the day of the child's birth, he purchased a $100 money order and gave it, along with baby clothing, to his mother to forward to the biological mother. However, the money order was not mailed to the biological mother until after the adoption petition and thus too late under the statute. *Id.* at 197, 552 S.E.2d 148-49.

We believe the facts and evidence of the instant case could meet *Byrd's* requirement of tangible support. The trial court order made the following selected findings of fact:

15. The Respondent acknowledges that he never provided any actual financial support to Ms. Anderson; however, he and four high school students testified that he offered her money at school during [] September, October, and November of 2002 but that she rejected his offers. The witnesses at trial were sequestered and their testimony ranged from offers of support having been made between "three or four times" up to "six to eight times." The Respondent testified that he offered her money six to seven times at school. Ms. Anderson testified that he never offered her money at

school. All the testimony regarding offers made at school is not consistent with the Respondent having dropped out on September 18, 2002.

16. Considering the school calender, the attendance records of the student witnesses and the Respondent, and the Respondent's withdrawal from school on September 18, 2002, it is unlikely that the Respondent made as many as six to eight offers at school. The Respondent may have offered Ms. Anderson cash at school on more than one occasion; however, this is not significant because he failed to ever provide Ms. Anderson with any tangible or actual support.

17. Some time during the late summer of 2002, prior to September 22, 2002, the Respondent's mother told Ms. Anderson that she would be welcome to come stay with the Respondent's family if she needed a place to stay; however, Ms. Anderson did not accept that offer. Once again, no tangible support was provided.

\*\*\*\*

19. During the term of the pregnancy, the Respondent had the ability to provide financial support or other tangible support to Ms. Anderson; however, he failed to do so. The Respondent did manage to purchase a car in the amount of $1,000 for himself during the fall of 2002.

20. The Respondent did make some effort to provide support to Ms. Anderson. In December of 2002, the Respondent and his sister drove to the Andersons' residence. The Respondent went to the front door and attempted to hand deliver an envelope containing a letter and a check in the amount of $100.00. Ms. Anderson's father answered the door and refused to accept the envelope. The Respondent offered no documentary evidence of the check or letter at trial.

21. On December 22, 2002, the Respondent's attorney sent a letter to Ms. Anderson in which the Respondent acknowledged paternity, offered financial assistance to Ms. Anderson and the baby, and gave notice that he was not willing to consent to the adoption. This letter was admitted into evidence without objection.

**IN RE ADOPTION OF ANDERSON**

[165 N.C. App. 413 (2004)]

Of these findings relating to attempts of support made by Mr. Avery, it is clear under *Byrd* that the mother's offer to house Ms. Anderson during the pregnancy does not suffice as tangible or actual support unless there was evidence that the putative father was providing financial aid to induce the mother's offer of assistance. However, without making a specific finding as to whether or not Mr. Avery did tender[1] money to Ms. Anderson at school, the trial court found that even if such tenders had been made, one or all of them would not meet *Byrd's* requirement of actual or tangible support. In sum, the court found the alleged tenders of money at school, the money brought to Ms. Anderson's door, and offers of support by Mr. Avery's attorney were all insufficient as a matter of law to meet the support payment prong of N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II). We do not agree.

Unlike *Byrd*, all of these attempts to impart support were made before N.A. was born. While we have no conclusive finding to review as to whether Mr. Avery tendered actual payments at school, there is his own testimony and that of four students that he did make such tenders at least three times during the early part of the school year, in the second and early part of the third trimester of the pregnancy, and Ms. Anderson rebuffed these tenders. Furthermore, there is evidence Mr. Avery went to Ms. Anderson's home and tendered an envelope containing $100. And finally, it is of record that Mr. Avery retained an attorney. This attorney, as the agent of Mr. Avery, sent the following in a letter:

> Mr. Avery will be more than willing to provide reasonable financial assistance regarding your medical expenses, living expenses or any other needs that you or the baby may require. Please let us know of any financial needs you may have by contacting myself or Mr. Avery directly.

In short, and assuming at least some money was tendered at school, Mr. Avery provided tangible money and a tangible document expressing a willingness to provide assistance. These provisions were made

---

1. As defined by Black's Law Dictionary, "tender" means: "An unconditional offer of money or performance to satisfy a debt or obligation. . . . The tender may save the tendering party from a penalty for nonpayment or nonperformance or may, if the other party unjustifiably refuses the tender, place the other party in default." Black's Law Dictionary 1479-80 (7th Ed. 1999). We use the word "tender" in regard to the evidence of Mr. Avery's unconditional offers of money at school, and on Ms. Anderson's doorstep, with great deliberateness. These tenders are distinguishable from *Byrd* and the alleged "offers" made in that case.

directly to Ms. Anderson. We hold this falls within the contemplation of *Byrd* and the statute as requiring the putative father to "provide[]" payments of support. N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II). We believe that "provide[]" in this context means to "to make available." *See* American Heritage Dictionary 997 (2d ed. 1985). Mr. Avery has made available actual and tangible support, with actual money and actual documentation via legal representation. He sufficiently tendered support in tangible form such that it had to be *directly* rebuffed—allegedly at school and at her home. Here, the tangible provisions of support were made by Mr. Avery, not his mother, and were directly rebuffed.

Evidence shows Mr. Avery has taken steps beyond manifestations or offers of support. He has taken actual, tangible steps: offering Ms. Anderson money at school, going to her home with money, and retaining counsel to provide documentation of his tender of support.

We find support in our holding from the majority in *Byrd*. The Court, in determining the intent behind the consent statute, stated:

> We believe the General Assembly crafted these subsections of this statute primarily to *protect* the interests and rights of men who have demonstrated paternal responsibility and to facilitate the adoption process in situations where a putative father for all intents and purposes has walked away from his responsibilities to mother and child, but later wishes to intervene to hold up the adoption process.

*Id.* at 194, 552 S.E.2d at 148. A putative father's "demonstra[tion] of paternal responsibility" cannot be rebuffed by a mother such that it renders his demonstration inconsequential. Mr. Avery cites a number of cases from different jurisdictions which also support our application of N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II). *In re K.D.O.*, 20 Kan. App. 2d 559, 889 P.2d 1158 (1995); *Abernathy v. Baby Boy*, 313 S.C. 27, 437 S.E.2d 25 (1993); and *In re Chandini*, 166 A.2d 599, 560 N.Y.S.2d 886 (1990). However, the facts of this case are distinguishable on their face from those of *Byrd*, and fit within the law of *Byrd* to which we are bound. The evidence of Mr. Avery's tenders of payment, if found as fact, would clearly meet the spirit and intent of the consent statute; Ms. Anderson's choice to rebuff these alleged tenders was one that should not affect the legal implications of such tenders. Otherwise, "consent" would act as something more akin to consideration for Mr. Avery's reasonable and consistent payments (assuming

they are), thus making his rights purely an issue of freedom of contract by Ms. Anderson and governed by the traditional "offer and acceptance" framework. This is clearly not what the legislature contemplated in recognizing the need to *protect* a putative father's right to demonstrate his ability to be a father.

Therefore, the trial court erred as a matter of law when applying N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II) and the precedent of *Byrd* to the evidence and facts of this case. Because the trial court misapplied the statute and the guidance of *Byrd*, we remand for entry of an order not inconsistent with this opinion.

## Best Interest Determination

Because we remand this case for further findings of fact and conclusions of law pursuant to the instruction of this opinion, it is premature to discuss the issue of the child's best interest under the adoption procedure as the issue may become moot by the district court's order modified pursuant to this opinion.

## Conclusion

In sum, we remand this case back to the district court to make findings of fact as to if and how many times Mr. Avery tendered payment to Ms. Anderson, and whether such payments were consistent and otherwise in accord with Mr. Avery's financial means. Upon such findings, and pursuant to this opinion and that of *Byrd*, the court shall determine whether Mr. Avery's consent is required.

Reversed and remanded.

Judge WYNN concurs.

Judge LEVINSON concurs with separate opinion.

I agree with the majority opinion insofar as it concludes that "providing" payments of support under the consent statute, N.C.G.S. § 48-3-601 (2003), can include offers of support that are made available, yet rebuffed by the mother. However, I disagree with the standard the majority employs to address *indirect* payments of support as opposed to *direct* payments of support.

The majority reasons that the offer by the mother of the putative father "to house [the expectant mother] during the pregnancy does not suffice as tangible or actual support unless there was evidence

that the putative father was providing financial aid *to induce the mother's offer of assistance.*" (emphasis added). In my view, requiring a nexus between a putative father's contribution towards his mother's household expenses with the *reason* his mother offers housing to the expectant mother is neither supported by the relevant consent statute nor well-grounded in reason.

Where supported by the evidence and documented through findings of fact, a putative father's payments of, *e.g.*, rent to his mother and/or payments of household utilities, could be considered "payments" under the consent statute. Indeed, such means of indirect support can be as tangible and essential as any direct payments of cash to the expectant mother.

However, it does not follow that a trial court must determine the motivating reason for the putative father's mother's offer of housing when objectively evaluating whether the putative father has provided support to the expectant mother. Maybe the putative father's mother did so only after requiring her son to contribute to the household needs. Perhaps she would offer housing to the expectant mother no matter what. Whatever the reason, it is irrelevant in an analysis of the support prong codified in G.S. § 48-3-601, which makes the relevant inquiry whether the putative father, during the relevant time period, provided support consistent with his means.

As was the case in the appeal presented in *In re Adoption of Byrd*, 354 N.C. 188, 552 S.E.2d 142 (2001), *aff'g* 137 N.C. App. 623, 529 S.E.2d 465 (2000), the trial court in the instant case made no findings related to whether Mr. Avery provided financial support to the household of his mother. Moreover, the parties have neither assigned error nor briefed this issue, and the majority's suggestion that "inducement" be examined when a putative father's mother offers housing to the expectant mother is not essential to its opinion. Thus, as this appeal does not implicate a connection between a putative father's support of his mother's household and his mother's offer to house the expectant mother, the "inducement" standard suggested by the majority to evaluate indirect payments of support is *dicta* and is not binding on our trial courts.