ARROWOOD, Judge.
Respondent, the putative father of S.K.G.[1] , appeals from the interlocutory order of the trial court determining respondent's consent is not necessary to proceed with petitioners' adoption of S.K.G. For the following reasons, we affirm.
I. Background
Prior to the birth of S.K.G., the birth mother (the "mother") and her boyfriend (the "boyfriend") began making preparations for the adoption of S.K.G. Those preparations included meeting with an adoption counselor supervisor (the "counselor") from A Child's Hope, LLC, a licensed child-placing agency (the "Agency"), on 25 May 2016. At that time, the boyfriend executed an affidavit of parentage and a relinquishment of minor for adoption, and the mother selected petitioners from profiles of prospective adoptive parents. The mother then attended a "match meeting" with petitioners on 1 June 2016.
However, upon the birth of S.K.G. on 4 June 2016, it became clear that the boyfriend was not the father of S.K.G. At that time, the mother notified respondent that he may be the father and respondent agreed to provide a DNA sample. On 5 June 2016, the mother proceeded with the adoption process by executing a relinquishment of minor for adoption. Pursuant to the relinquishment, the mother surrendered custody of S.K.G. to the Agency for adoption by petitioners. On 6 June 2016, the mother executed an affidavit of parentage, on which she listed respondent as a possible biological father.
The counselor from the Agency met with respondent at his home on 6 June 2016. At that time, respondent would not consent to the adoption of S.K.G. until the results of the DNA analysis were returned. The subsequent analysis of a DNA sample provided by respondent showed that respondent was the biological father of S.K.G.
Before the analysis of respondent's DNA was completed, petitioners initiated the present action on 14 June 2016 by filing a petition for the adoption of S.K.G. Respondent was served with notice of the adoption proceeding on 1 July 2016. On 15 July 2016, respondent filed a response indicating he did not want to give S.K.G. up for adoption. As a result of respondent's desire to raise S.K.G., on 19 July 2016, an assistant clerk filed an order transferring the matter to the Wake County District Court Division for a determination of whether respondent's consent was necessary to proceed with the adoption. See N.C. Gen. Stat. § 48-2-601(a1) (2015).
The matter was heard in Wake County District Court before the Honorable Ned Mangum on 3 and 4 November 2016. On 23 November 2016, the trial court filed an "Order Finding that the Consent of Biological Parent is Not Necessary." In the order, the trial court found that respondent is not married to the birth mother and has not attempted to marry the birth mother, has not legitimated the child, has not received the child in his home and held the child out as his own, and is not obligated to support the child under a written agreement or court order. See N.C. Gen. Stat. § 48-3-601(2)(b). Consequently, the trial court concluded that, in order for respondent's consent to be necessary, respondent must meet the requirements of N.C. Gen. Stat. § 48-3-601(2)(b)(4). The trial court made findings supporting its determination that respondent failed to meet those requirements and, therefore, concluded that respondent's consent to the adoption of S.K.G. was not required. Respondent filed notice of appeal on 21 December 2016.
II. Appealability
"Generally, there is no right of immediate appeal from interlocutory orders and judgments." Goldston v. Am. Motors Corp., 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." Veazey v. City of Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citations omitted). "[I]mmediate appeal is available[, however] from an interlocutory order or judgment which affects a 'substantial right.' " Sharpe v. Worland, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (citing N.C. Gen. Stat. § 1-277(a) ). "[W]hen an appeal is interlocutory, the appellant must include in its statement of grounds for appellate review 'sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right.' " Johnson v. Lucas, 168 N.C. App. 515, 518, 608 S.E.2d 336, 338 (quoting N.C. R. App. P., Rule 28(b)(4) ), aff'd per curiam, 360 N.C. 53, 619 S.E.2d 502 (2005).
In this case, respondent acknowledges that this is an interlocutory appeal. Nevertheless, respondent contends immediate appellate review is proper because the trial court's order infringes on his substantial right to participate in the adoption proceedings of his child. We agree.
This Court has held that an interlocutory order that eliminates the fundamental right of a parent to make decisions concerning the care, custody, and control of their child affects a substantial right and is therefore immediately appealable. See In re Adoption of Shuler, 162 N.C. App. 328, 330, 590 S.E.2d 458, 460 (2004) (allowing immediate appeal of an order denying a putative father's motion to dismiss an adoption petition); see also In re Adoption of Anderson, 165 N.C. App. 413, 415, 598 S.E.2d 638, 640 (2004) (acknowledging that "this Court and our Supreme Court have addressed the merits of trial court orders concerning a putative father's consent" and allowing immediate review of the trial court's determination that the putative father's consent was not necessary in adoption proceedings), rev'd on other grounds, 360 N.C. 271, 624 S.E.2d 626 (2006). Respondent's rights in this case are no different than those rights at issue in Shuler and Anderson, in which this Court allowed immediate review. Immediate review is also proper in this case to protect respondent's substantial right.
III. Discussion
On appeal, respondent argues the trial court erred in determining his consent was not necessary to the adoption proceedings for S.K.G.
N.C. Gen. Stat. § 48-3-601 governs whose consent to adoption is required. At issue in this case, subsection (2)(b) provides when "[a]ny man who may or may not be the biological father of the minor" must consent to the adoption in a direct placement. The trial court's analysis in this case focused on N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II), as it was clear from the evidence that the other sections requiring consent were not pertinent in this case. N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II) provides that consent is required if, before the filing of the petition for adoption, the man has "acknowledged his paternity of the minor" and
[h]as provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support, and has regularly visited or communicated, or attempted to visit or communicate with the biological mother during or after the term of pregnancy, or with the minor, or with both[.]
N.C. Gen. Stat. § 48-3-601(b)(4)(II) (2015). As stated above, in this case, the trial court issued findings supporting the conclusion that respondent did not meet the requirements of N.C. Gen. Stat. § 48-3-601(2)(b)(4)(II).
On appeal, respondent does not challenge the trial court's findings or the trial court's conclusion that he failed to meet the requirements of N.C. Gen. Stat. § 48-3-601. Instead, respondent argues this Court should recognize limited circumstances in which a putative father should be excused from strictly complying with the requirements of N.C. Gen. Stat. § 48-3-601 in order to protect a putative father's inchoate rights and to satisfy due process. Respondent contends those limited circumstances should include this case, where "a putative father takes prompt action and initiates good faith efforts to take responsibility for his illegitimate child and assert his inchoate rights in an effort to support a relationship with his illegitimate child." We are not persuaded this case should be an exception.
Because respondent's argument concerns his constitutional rights to parent his child and to due process, de novo review is appropriate. See Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc., 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated.").
We are guided in our de novo review by our Supreme Court's decision in In re Adoption of S.D.W., 367 N.C. 386, 758 S.E.2d 374 (2014). In In re Adoption of S.D.W., "[t]he issue presented ... concern[ed] the legal ability of a biological father who is unaware that he has fathered a child to object to the mother's decision to place the child for adoption." Id. at 387, 758 S.E.2d at 375. In that case, the respondent and the mother were involved in an intimate relationship for a period of months during which they "had sex[ ] 10 to 20 times a week." Id. After the respondent ended the relationship, they occasionally engaged in additional acts of sexual intercourse. Id. at 387, 758 S.E.2d at 376. Without the knowledge of the respondent, the mother gave birth to their child, S.D.W., and relinquished custody of S.D.W. to an adoption agency. Id. at 388, 758 S.E.2d at 376. After a petition for S.D.W.'s adoption was filed, the respondent learned of S.D.W. and sought to intervene in the adoption proceedings and to dismiss the adoption petition. Id. The trial court first denied the respondent's motion to intervene. Id. at 389, 758 S.E.2d at 377. Then, upon a motion for summary judgment by the petitioners, the trial court "entered an order allowing the adoption to proceed without [the respondent's] consent[,]" finding that the respondent "failed to comply with any provision of [N.C. Gen. Stat. §] 48-3-601 to make his consent necessary in this adoption ...." Id. at 390, 758 S.E.2d at 377 (internal quotation marks and brackets omitted).
On appeal, this Court "determined that the issues on appeal boiled down to 'whether the trial court properly concluded that [the respondent's] consent was not required under the adoption statutes and under the state or federal constitutions and whether the trial court properly interpreted the statutes at issue.' " Id. at 391, 758 S.E.2d at 378 (quoting In re S.D.W., 228 N.C. App. 151, 155, 745 S.E.2d 38, 42 (2013) ). Upon review, this Court agreed that respondent's consent was not required under N.C. Gen. Stat. § 48-3-601. Id. Yet,
[this Court] went on to consider the constitutional implications of [the respondent's] claim, holding that when "a biological father, who prior to the filing of the petition was unaware that the mother was pregnant and had no reason to know [of the pregnancy], promptly takes steps to assume parental responsibility upon discovering the existence of the child has developed a constitutionally protected interest sufficient to require his consent where the adoption proceeding is still pending."
Id. (quoting In re S.D.W., 228 N.C. App. at 170, 745 S.E.2d at 51 ). This Court then reversed the trial court, "[c]oncluding that insufficient facts existed in the record to determine whether applying [N.C. Gen. Stat.] § 48-3-601 to [the respondent] would violate his due process rights[.]" Id. (citing In re S.D.W., 228 N.C. App. at 160, 169-70, 745 S.E.2d at 44, 50-51 ). Our Supreme Court allowed discretionary review. In re S.D.W., 367 N.C. 243, 748 S.E.2d 315 (2013).
The initial question the Court considered in In re Adoption of S.D.W. was " 'the extent to which a natural father's biological relationship with his child receives protection under the Due Process Clause.' " 367 N.C. at 391-92, 758 S.E.2d at 378 (quoting Lehr v. Robertson, 463 U.S. 248, 258, 77 L.Ed. 2d 614, 624 (1983) ). To answer that question, the Court relied on the United States Supreme Court's analysis in Lehr, in which a putative father raised due process and equal protection challenges when he was not provided notice of adoption proceedings concerning a child whom he never supported and rarely saw. Lehr, 463 U.S. at 249-50, 77 L.Ed. 2d at 619. In Lehr, the Supreme Court explained that " '[p]arental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.' " Lehr, 463 U.S. at 260, 77 L.Ed. 2d at 626 (quoting Caban v. Mohammed, 441 U.S. 380, 397, 60 L.Ed. 2d 297, 310 (1979) (Stewart, J., dissenting)) (emphasis omitted).
When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause. ... But the mere existence of a biological link does not merit equivalent constitutional protection.
Id. at 261, 77 L.Ed. 2d at 626 (quoting Caban, 441 U.S. at 392, 60 L.Ed. 2d at 307 ).
The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.
Id. at 262, 77 L.Ed. 2d. at 627 (footnote omitted). In Lehr, the Supreme Court then went on to hold that the New York statutory scheme adequately protected a putative father's opportunity to develop a relationship with his child. Id. at 265, 77 L.Ed. 2d at 629.
Guided by Lehr, in In re Adoption of S.D.W., our Supreme Court recognized that "North Carolina has adopted a statutory framework designed to protect 'both the interests of biological fathers in their children and the children's interest in prompt and certain adoption procedures[.]' " In re Adoption of S.D.W., 367 N.C. at 394, 758 S.E.2d at 380 (quoting Lehr, 463 U.S. at 263, 77 L.Ed. 2d at 628 ). The Court, however, further explained that the statute "nevertheless may fail constitutional scrutiny ... if the qualifications for notice are beyond the control of an interested putative father." Id. (citing Lehr, 463 U.S. at 263-64, 77 L.Ed. 2d at 628 ). In response to the respondent's argument in In re Adoption of S.D.W. that "he was deprived of knowledge of S.D.W.'s birth and denied the opportunity to demonstrate his commitment as a parent within the time provided by the statute [,]" ibr.US_Case_Law.Schema.Case_Body:v1">id. at 395, 758 S.E.2d at 380, the Court held that the respondent was not deprived of due process by the trial court's determination that his consent was not necessary for the adoption of S.D.W. to proceed because the respondent "[did] not fall into the class of protected fathers who may claim a liberty interest in developing a relationship with a child[.]" Id. at 396, 758 S.E.2d at 381.
Our Supreme Court reasoned that although the mother "took steps to disguise [the respondent's] identity and failed to advise [the respondent] of the child's birth when given the opportunity[,]" "nothing she did or failed to do placed [the respondent] in a position in which 'qualification for notice' of the existence of S.D.W. was 'beyond [his] control' during the relevant statutory time frame." Id. at 395, 396, 758 S.E.2d at 380, 381. The Court explained that the father "demonstrated only incuriosity and disinterest" where "[h]e knew that [the mother] was fertile because she already had a child when they met[,]" "[h]e knew that, despite [the mother's] purported use of birth control, he had impregnated her once, leading to an abortion[,]" "[h]e assumed that her subsequent birth control methods would be effective without making detailed inquiry[,]" "[h]e and [the mother] continued an active sex life, even after they broke up[,]" and where "[t]he burden on him to find out whether he had sired a child was minimal[.]" Id. at 395, 758 S.E.2d at 380-81.
Respondent cites both Lehr and In re Adoption of S.D.W. in the present case. Yet, respondent seeks to avoid a similar result by distinguishing the facts in those cases from those in the present case. Respondent instead asks this Court to compare his case to Doe v. Queen, 347 S.C. 4, 552 S.E.2d 761 (2001), a South Carolina Supreme Court decision that is not binding on this Court.
We agree with respondent that the facts of this case are distinguishable from Lehr and In re Adoption of S.D.W. Unlike in Lehr, respondent in this case did not have actual knowledge that he was the father and the petition for adoption was filed soon after the birth of S.K.G. Unlike in In re Adoption of S.D.W., in this case respondent and the birth mother were not involved in a dating relationship and only engaged in two or three incidents of sexual intercourse over a short period of time, the birth mother was married and lived with a boyfriend who was not respondent, and respondent and the birth mother had never conceived a child together. Based on these distinctions, respondent contends that there was no rational basis to believe he was the father in this case. Moreover, respondent claims that he lacked all control over his inchoate interests and there was insufficient time between the birth of S.K.G. and the filing of the adoption petition for him to protect his inchoate interests in developing a relationship with S.K.G. We are not persuaded the distinctions warrant a result different from those in Lehr and In re Adoption of S.D.W., or an exception to the requirements of N.C. Gen. Stat. § 48-3-601.
Below, the trial court's determination that respondent's consent was not necessary was based on the following unchallenged findings:
13. Respondent testified that he had unprotected sex with the birth mother "two or three times."
14. Respondent credibly testified that he saw the birth mother after they had sex and when he saw her he could see that she was visibly pregnant and the court finds that he knew that she was pregnant.
15. Respondent credibly testified that he did not regularly visit or communicate, or attempt to visit or communicate with the birth mother and the court finds that he did not regularly visit or communicate or attempt to communicate with the birthmother.
16. Respondent credibly testified in his deposition that he did not think he was the father of the child the birthmother was carrying because the birthmother told him that she was "on the shot" as a form of birth control and that he had heard that she had sex with other men and that she was living with another man.
....
18. The birth mother credibly testified that she told Respondent that she was pregnant and that he could be the putative father.
....
21. Respondent testified that the birth mother called him shortly after the birth of the child [in] early June 2016 and that she informed him that the child was born with the appearance of being mixed race and did not belong to [the boyfriend]. He further testified that she stated that the child was being placed for adoption and that she asked if he would do a DNA test and speak to the adoption counselor for the adoption agency.
22. Respondent stated that he did not did not [sic] provide support or tangible goods to or for the birth mother or child during the birth mother's pregnancy and the Court finds that Respondent did not provide any support or tangible goods during the pregnancy.
23. Respondent testifies and the court also finds that he did not provide support to or for the birth mother or child after the child's birth prior to the filing of the petition for adoption on June 14, 2016.
....
29. The court finds that the Respondent had the means and ability to provide some financial support or tangible assistance to or for the birth mother or child prior to the filing of the petition for adoption.
30. Prior to the filing of the petition for adoption:
a. Respondent testified and the court finds that he did not acknowledge paternity of the child.
b. Respondent testified that he did not regularly visit or communicate, or attempt to visit or communicate with the birth mother and the court finds that he did not regularly visit or communicate or attempt to visit or communicate with the birthmother during the pregnancy.
c. Respondent testified that [he] did not provide any financial payments or tangible support for the support of the birth mother during or after the term of pregnancy, or the support of the minor child, or both.
d. Respondent testified and the court finds that that [sic] he did not provide any tangible assistance for the support of the birth mother during or after the term of pregnancy, or the support of the minor child, or both.
Contrary to respondent's arguments, it was not irrational to believe that respondent may be the father of S.K.G. Respondent had unprotected sexual intercourse with the mother and knew the mother had become pregnant. We see no reason to distinguish the result in this case from In re Adoption of S.D.W. simply because respondent and the mother were not in a dating relationship and the number of incidents of sexual intercourse was far less. Moreover, as this Court made clear in In re Adoption of S.D.W., the fact that respondent believed the mother was on birth control is unavailing where respondent left responsibility for birth control solely to the mother. See In re Adoption of S.D.W., 367 N.C. at 395, 758 S.E.2d at 380-81. Indeed, the trial court even found that the mother told respondent that he could be the father. Thus, respondent was on notice that he may be the father.
Respondent's argument that he didn't have time to meet the requirements of N.C. Gen. Stat. § 48-3-601 is equally unavailing. Respondent's argument suggests that he only had ten days between the birth of S.K.G. and the filing of the adoption petition to take responsibility for S.K.G. Yet, given that it was reasonable to believe respondent may be the father prior to the birth of S.K.G., respondent had ample time to meet the requirements of the statute. As the trial court found, respondent admitted he did not make efforts to provide for or visit either the mother or S.K.G. prior to the filing of the petition. Even after it became more clear that he was likely the father upon S.K.G.'s birth, respondent did not take responsibility in the ten days before the filing of the petition for adoption; respondent instead chose to wait for DNA results to confirm that he was the biological father. Like the father's "incuriosity and disinterest" in In re Adoption of S.D.W., 367 N.C. at 395, 758 S.E.2d at 380, respondent's inaction during the birth mother's pregnancy and after the birth of S.K.G., but before the filing of the petition, is fatal to his argument that strict application of N.C. Gen. Stat. § 48-3-601 deprives him of his rights.
Given that the Court has held a putative father failed to take the required steps to make consent necessary where the putative father did not even know of the pregnancy and the mother took efforts to conceal the father's identity, see In re Adoption of S.D.W., 367 N.C. at 395-96, 758 S.E.2d at 380-81, we hold the facts in this case, although distinguishable, do not warrant an exception to the requirements of N.C. Gen. Stat. § 48-3-601. Therefore, the trial court did not err in determining respondent's consent was not necessary for the adoption of S.K.G. to proceed. Strict application of N.C. Gen. Stat. § 48-3-601 does not violate respondent's rights.
Because In re Adoption of S.D.W. is controlling in this instance, we do not look to the South Carolina case.
IV. Conclusion
For the reasons discussed above, we hold the trial court did not err in determining respondent's consent was not necessary for the adoption of S.K.G. to proceed.
AFFIRMED.
Report per Rule 30(e).
Judge BRYANT concurs.
Judge MURPHY concurs in result only without a separate opinion.

Initials are used to protect the identity of the minor.