IN RE ADOPTION OF BABY GIRL ANDERSON

No. 448PA04

(Filed 27 January 2006)

**Adoption— father's consent—not required—support offered but not accepted**

Respondent's consent to adoption of his biological daughter was not required because his attempts to offer financial support were rejected by the mother. The bright line rule of *In re Adoption of Byrd*, 354 N.C. 188, is not modified; attempts or offers of support will not suffice. However, the mother's refusal to accept assistance cannot defeat the father's paternal interest as long as the father makes reasonable and consistent payments for the support of the child, such as to a bank account or trust fund. N.C.G.S. § 48-3-601.

**IN RE ADOPTION OF ANDERSON**

[360 N.C. 271 (2006)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 165 N.C. App. 413, 598 S.E.2d 638 (2004), reversing and remanding an order entered on 7 March 2003 by Judge Alice C. Stubbs in District Court, Wake County. On 3 March 2005, the Supreme Court allowed respondent's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court 15 November 2005.

*Herring, McBennett, Mills & Finkelstein, P.L.L.C., by Bobby D. Mills, E. Parker Herring, and Stephen W. Petersen, for petitioner-appellants/appellees.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for respondent-appellee/appellant.*

NEWBY, Justice.

The issue is whether the consent of respondent Michael Avery must be obtained before petitioners' adoption of his biological daughter may proceed. Because respondent merely offered support but did not provide the actual financial support mandated under N.C.G.S. § 48-3-601, we hold his consent to the adoption is not required.

## I. BACKGROUND

In autumn of 2001, Kristine Anderson and respondent began a monogamous relationship while enrolled at Onslow County's Northside High School. Anderson conceived respondent's child sometime in the spring of 2002 and confirmed her pregnancy in June or July. During July or August of 2002, Anderson informed respondent of her plan to place the baby for adoption. Although respondent initially agreed to this course of action, he withdrew his consent after discussing the matter with his mother. On 18 September 2002, respondent quit high school. Anderson subsequently gave birth to N.A. on 6 January 2003.

On 9 or 10 January 2003, respondent received notice of petitioners' petition to adopt N.A.[1] On 10 January 2003, petitioners filed a motion asking the Wake County Clerk of Court to determine whether respondent's consent to the adoption was necessary under N.C.G.S. § 48-3-601 (permitting adoptions to proceed without the

---

1. Section 48-9-104 of the General Statutes protects petitioners' identities from disclosure. Petitioners have had physical custody of N.A. since on or about 14 January 2003.

**IN RE ADOPTION OF ANDERSON**

[360 N.C. 271 (2006)]

consent of putative fathers who fail to meet its requirements). Petitioners submitted an affidavit from Anderson, who asserted she and respondent were unwed and that respondent had never provided "financial or in-kind assistance" to her or their child. Respondent timely filed an opposition to the proposed adoption. In an order dated 27 January 2003, the Clerk of Court decided the adoption could proceed without respondent's consent. Respondent thereafter filed a notice of appeal to the district court for review *de novo*.

During its 17 February 2003 session, the district court conducted a hearing on the matter. Most of the evidence concerned whether respondent had complied with the support prong of N.C.G.S. § 48-3-601, which directs putative fathers who desire a role in the adoption process to provide, "in accordance with [their] financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy." N.C.G.S. § 48-3-601(2)(b)(4)(II) (2005). The evidence showed respondent had an employment history going back to 1999, with stints at Food Lion, Little Caesars, and Citgo. At the time of hearing, respondent worked for the International House of Pancakes. Respondent lived with his parents while Anderson was pregnant and paid nothing for rent, utilities, food, or clothing. Following testimony from Anderson, respondent, respondent's sister, and four of respondent's former classmates, the trial court entered the below findings of fact concerning respondent's efforts to furnish support to Anderson during her pregnancy:

> 15. *The Respondent acknowledges that he never provided any actual financial support to Ms. Anderson;* however, he and four high school students testified that he offered her money at school during . . . September, October, and November of 2002 but that she rejected his offers. The [testimony of] witnesses at trial . . . ranged from offers of support having been made between "three or four times" up to "six to eight times." The Respondent testified that he offered her money six to seven times at school. Ms. Anderson testified that he never offered her money at school. All the testimony regarding offers made at school is not consistent with the Respondent['s] having dropped out on September 18, 2002.

> 16. Considering the school calendar, the attendance records of the student witnesses and the Respondent, and the Respondent's withdrawal from school on September 18, 2002, it is unlikely that

the Respondent made as many as six to eight offers at school. The Respondent may have offered Ms. Anderson cash at school on more than one occasion; however, . . . he failed to ever provide Ms. Anderson with any tangible or actual support.

17. Some time during the late summer of 2002, prior to September 22, 2002, the Respondent's mother told Ms. Anderson that she would be welcome to come stay with the Respondent's family . . . ; however, Ms. Anderson did not accept that offer. . . .

18. On September 22, 2002, the Respondent, Ms. Anderson, and their parents conducted a "family meeting" to discuss the pregnancy. At no time during this meeting did the Respondent or his parents make any offers to provide financial support to Ms. Anderson or the baby.

19. *During the term of the pregnancy, the Respondent had the ability to provide financial support or other tangible support to Ms. Anderson; however, he failed to do so.* The Respondent did manage to purchase a car in the amount of $1,000 for himself during the fall of 2002.

20. The Respondent did make some effort to provide support to Ms. Anderson. In December of 2002, the Respondent and his sister drove to the Andersons' residence. The Respondent went to the front door and attempted to hand deliver an envelope containing a letter and a check in the amount of $100.00. Ms. Anderson's father answered the door and refused to accept the envelope. The Respondent offered no documentary evidence of the check or letter at trial.

21. On December 22, 2002, the Respondent's attorney sent a letter to Ms. Anderson in which the Respondent acknowledged paternity, offered financial assistance to Ms. Anderson and the baby, and gave notice that he was not willing to consent to the adoption. . . .

(Emphasis added.)

Based on its findings of fact, the trial court concluded respondent's consent to adoption was not required under N.C.G.S. § 48-3-601 since respondent had "fail[ed] to provide actual support to Ms. Anderson or the baby." The court cited *In re Adoption of Byrd*, 354 N.C. 188, 552 S.E.2d 142 (2001) as controlling precedent. According to the trial court, *Byrd* holds "that [mere] offers of support by [the puta-

IN RE ADOPTION OF ANDERSON

[360 N.C. 271 (2006)]

tive father] or by third parties are not sufficient." The court dismissed respondent's opposition with prejudice.

The Court of Appeals reversed. *In re Adoption of Anderson,* 165 N.C. App. 413, 598 S.E.2d 638 (2004). In so doing, the court distinguished between the "offers" of support at issue in *Byrd* and respondent's "tenders" of support to Anderson. *Id.* at 419 n.1, 598 S.E.2d 642 n.1 ("We use the word 'tender' . . . with great deliberateness. The[] tenders [by respondent] are distinguishable from . . . the alleged 'offers' made in [*Byrd*]."). In the opinion of the Court of Appeals, while the offers of the *Byrd* putative father fell short of "tangible support," the alleged tenders of respondent "could meet *Byrd's* requirement of tangible support." *Id.* at 417, 598 S.E.2d at 641.

> Unlike *Byrd,* all of [respondent's] attempts to impart support were made before N.A. was born. . . . [A]ssuming at least some money was tendered at school, [respondent] provided tangible money and a tangible document expressing a willingness to provide assistance. These provisions were made directly to Ms. Anderson. We hold this falls within the contemplation of *Byrd* and the statute as requiring the putative father to "provide[]" payments of support. . . . [Respondent] sufficiently tendered support in tangible form such that it had to be *directly* rebuffed. . . .

*Id.* at 419-20, 598 S.E.2d at 642 (citations omitted). The Court of Appeals remanded to the trial court for additional findings of fact regarding respondent's alleged schoolhouse tenders and a fresh determination of whether respondent's tenders constituted reasonable and consistent payments in fulfillment of N.C.G.S. § 48-3-601. *Id.* at 421, 598 S.E.2d at 643. We allowed petitioners' petition for discretionary review.

## II. ANALYSIS

Petitioners argue the Court of Appeals' distinction between tenders and offers conflicts with this Court's decision in *Byrd.* Petitioners contend respondent never provided the actual, tangible support *Byrd* requires. Respondent maintains he proffered tangible support to Anderson in compliance with N.C.G.S. § 48-3-601 and *Byrd.* Holding to the contrary, respondent warns, would permit mothers to thwart the rights of putative fathers simply by declining to accept support.

Chapter 48 of our General Statutes governs adoption procedures in North Carolina. In enacting the Chapter, the General Assembly rec-

ognized the public interest in "establish[ing] a clear judicial process for adoptions, . . . promot[ing] the integrity and finality of adoptions, [and] structur[ing] services to adopted children, biological parents, and adoptive parents that will provide for the needs and protect the interests of all parties to an adoption, particularly adopted minors." N.C.G.S. 48-1-100(a) (2005). Section 48-3-601 makes mandatory the consent of certain individuals before a trial court may grant an adoption petition. These individuals include the minor himself whenever he is twelve or more years of age, as well as the mother of the minor and the mother's husband at the time of the minor's birth. *Id.* The consent of an unwed putative father in circumstances such as those of the instant case is not obligatory unless he has assumed some of the burdens of parenthood. Specifically, the putative father has rights under N.C.G.S. § 48-3-601 if he:

> 4. Before . . . the filing of the [adoption] petition . . . acknowl-edge[s] his paternity of the minor and
>
> . . . .
>
> II. [P]rovide[s], *in accordance with his financial means, rea-sonable and consistent payments* for the support of the bio-logical mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support, and has regularly visited or communicated, or attempted to visit or communicate with the biological mother during or after the term of pregnancy, or with the minor, or with both . . . .

N.C.G.S. § 48-3-601(2)(b)(4)(II) (emphasis added).[2]

Our Court construed N.C.G.S. § 48-3-601(2)(b)(4)(II) ("the subsection") in *Byrd*. There the paternal grandmother offered O'Donnell, the expectant mother, a place to live and help with medical bills and other costs, all of which O'Donnell declined. 354 N.C. at 190, 552 S.E.2d at 144. On the day O'Donnell gave birth, the putative father purchased a $100 money order for her; however,

---

2. Section 48-3-601 also requires the consent of a putative father in other situations. For example, a putative father acquires the right to consent if he timely acknowledges paternity and either (1) "[i]s obligated to support the minor under written agreement or by court order" or (2) "[a]fter the minor's birth but before the minor's placement for adoption or the mother's relinquishment, has married or attempted to marry the mother of the minor by a marriage solemnized in appar-ent compliance with law, although the attempted marriage is or could be declared invalid." N.C.G.S. § 48-3-601(2)(b)(4)(I)&(III) (2005).

**IN RE ADOPTION OF ANDERSON**

[360 N.C. 271 (2006)]

the money order did not reach O'Donnell until after the petitioners had filed for adoption. *Id.* at 191, 552 S.E.2d at 145. Holding the adoption could proceed without the father's consent, the Court opined that "attempts or offers of support, made by the putative father or another on his behalf, are not sufficient for purposes of the statute;" it further observed that the money order "arrived too late, as the statute . . . provides for the relevant time period to end at the filing of the adoption petition." *Id.* at 197, 552 S.E.2d at 148-49. In arriving at the outcome of *Byrd*, the Court explained what the subsection demands of putative fathers:

> [The putative father] must have satisfied . . . three prerequisites . . . *prior to the filing of the adoption petition,* in order for his consent to be required. [He] must have acknowledged paternity, *made reasonable and consistent support payments for the mother or child or both in accordance with his financial means,* and regularly communicated or attempted to communicate with the mother and child. Under the mandate of the statute, *a putative father's failure to satisfy any of these requirements before the filing of the adoption petition would render his consent to the adoption unnecessary.*

*Id.* at 194, 552 S.E.2d at 146 (emphases added).

In the case *sub judice*, respondent's acknowledgment of paternity and communication with Anderson are not at issue. The sole dispute before us is whether respondent "made reasonable and consistent support payments . . . in accordance with his financial means." *Id.* If he did not, then petitioners may adopt N.A. without his consent. *Id.*

After careful consideration, we deem the Court of Appeals' distinction between offers and tenders unconvincing. A tender in this context is nothing more than "[a] valid or sufficient *offer* of performance." *Black's Law Dictionary* 1507 (8th ed. 2004) (emphasis added). Thus, the analysis of the Court of Appeals begs the question of whether mere offers can satisfy the subsection's support prong. This Court addressed precisely that question in *Byrd*:

> The "support" required under N.C.G.S. § 48-3-601(2)(b)(4)(II) is not specifically defined. *We believe, however, that "support" is best understood within the context of the statute as actual, real and tangible support, and that attempts or offers of support do not suffice.* Statutory language supports this conclusion. While

"attempted" communication [with mother and child] satisfies the statute, there is no such language used to describe the support requirement. N.C.G.S. § 48-3-601(2)(b)(4)(II). Presumably, the General Assembly intended a different meaning for the support prong of the test because of the differing language—one that excludes attempt to provide support. The statute also states that support may include "the *payment* of medical expenses, living expenses, or other *tangible means of support*," thus reflecting actual support provided. *Id.*

*Id.* at 196, 552 S.E.2d at 148 (first emphasis added).

We see no reason to modify *Byrd's* bright-line rule. The rule comports with the language of the subsection and reflects the importance of "a clear judicial process for adoptions." N.C.G.S. § 48-1-100(a). *See also Byrd*, 354 N.C. at 198, 552 S.E.2d at 149 ("The interests of the child and all other parties are best served by an objective test that requires . . . tangible support.") The Court of Appeals' offer/tender approach represents a departure from *Byrd*, and we reject it.

Having reaffirmed that mere offers of support are insufficient under N.C.G.S. § 48-3-601(2)(b)(4)(II), we next determine whether the record permits a conclusion concerning respondent's compliance with the subsection's support prong. Our examination of the record shows the trial court relied on an abundance of competent evidence when making its findings of fact (something no party challenges), and consequently, those findings are binding on appeal. *Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 219 (1983). Quoted above, the court's findings indicate respondent could have provided support for Anderson during her pregnancy, but instead spent $1,000 on an automobile for himself. According to his own testimony, respondent made approximately $240 per week in the fall of 2002 and had practically no expenses apart from the $100 he paid each month for automobile insurance. In other words, despite possessing adequate wherewithal, respondent "never provided any actual financial [payments] to Ms. Anderson," much less the reasonable and consistent payments required under the subsection.

The trial court did find that respondent offered Anderson support on several occasions towards the end of her pregnancy. In December of 2002, respondent went to the Anderson residence in an unsuccessful effort to deliver an envelope containing a check for

**IN RE ADOPTION OF ANDERSON**

[360 N.C. 271 (2006)]

$100; he likewise had his attorney send Anderson a letter declaring his willingness to furnish financial assistance to her and the baby. Additionally, respondent "may have" offered Anderson cash at school more than once during the fall of 2002. Though the Court of Appeals characterized the envelope and the letter as "tangible provisions of support," we hold that respondent's offers complied with neither the text of N.C.G.S. § 48-3-601 nor *Byrd's* interpretation of the same.

Notwithstanding respondent's arguments to the contrary, our resolution of the instant case does not grant biological mothers the power to thwart the rights of putative fathers. The subsection obliges putative fathers to demonstrate parental responsibility with reasonable and consistent payments "*for* the support of the biological mother." N.C.G.S. § 48-3-601(2)(b)(4)(II) (emphasis added). The legislature's deliberate use of "for" rather than "to" suggests the payments contemplated by the subsection need not always go directly to the mother. So long as the father makes reasonable and consistent payments *for* the support of mother or child, the mother's refusal to accept assistance cannot defeat his paternal interest. Here, respondent could have supplied the requisite support any number of ways, such as opening a bank account or establishing a trust fund for the benefit of Anderson or their child. Had he done so, Anderson's intransigence would not have prevented him from creating a payment record through regular deposits into the account or trust fund in accordance with his financial resources. By doing nothing more than sporadically offering support to Anderson, respondent left the support prong of N.C.G.S. § 48-3-601 unsatisfied and himself without standing to obstruct the adoption of N.A.

## III. DISPOSITION

Pursuant to N.C.G.S. § 48-3-601, respondent's consent to petitioners' adoption of N.A. is not required. We therefore reverse the decision of the Court of Appeals and instruct that court to reinstate the judgment of the trial court. Respondent's conditional petition for discretionary review is dismissed as improvidently allowed.

REVERSED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.