IN THE SUPREME COURT OF NORTH CAROLINA

No. 297PA16

Filed 11 May 2018

IN THE MATTER OF THE ADOPTION OF C.H.M., a minor child

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 788 S.E.2d 594 (2016), affirming an order entered on 9 February 2015 by Judge Debra Sasser in District Court, Wake County. Heard in the Supreme Court on 9 October 2017.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for petitioner-appellants.*

*Marshall & Taylor, PLLC, by Travis R. Taylor; and Robert A. Smith for respondent-appellee.*

NEWBY, Justice.

In this case we consider whether the evidence was sufficient as a matter of law to support the trial court's order requiring respondent father's consent before proceeding with the adoption of minor child C.H.M. To protect the significant interests of the child, biological parents, and adoptive parents, Chapter 48 of our General Statutes, governing adoption procedures in North Carolina, establishes clear, objective tests to determine whose consent is required before a court may grant an adoption petition. Under section 48-3-601, a putative father may unilaterally protect his paternal rights if he establishes that he has acknowledged his paternity,

regularly communicated or attempted to communicate with the biological mother or minor child, and provided reasonable and consistent payments for the support of the biological mother, minor, or both, in accordance with his financial means. All of these measures must be accomplished no later than the filing of the adoption petition. As a matter of law respondent's evidence does not establish that he made reasonable and consistent payments for the support of the biological mother or minor child before the filing of the adoption petition. Because respondent failed to meet his burden of proving that he provided such support within the relevant statutory period, we conclude that the evidence is legally insufficient to support the trial court's order requiring respondent's consent. Accordingly, we reverse the decision of the Court of Appeals that affirmed the trial court's order.

From 2009 through 2012, respondent and the biological mother (Wood) had an "on and off" intimate relationship while they both lived in Illinois. In November 2012, Wood ended her relationship with respondent to resume a relationship with another man, whom she married shortly thereafter in January 2013. As respondent was aware, Wood's husband worked and resided in North Carolina, though she continued to stay in Illinois for several months. After Wood's marriage, respondent and Wood continued to communicate primarily through Facebook.

On 11 February 2013, Wood informed respondent that she was twenty weeks pregnant (or halfway through her pregnancy) with his child, but immediately told respondent to keep everything "as secret as possible." Upon learning he was the

child's father, respondent told Wood he intended to "start setting money aside" for the child, but provided neither support at that time nor any details of his plan.

In March, respondent accompanied Wood to her first medical appointment and sonogram. The sonogram confirmed respondent's understanding of the timing of Wood's pregnancy, showing she was between her second and third trimesters. While respondent expressed his enthusiasm for becoming a father and offered to pay for the office visit, Wood refused respondent's offer because her husband's insurance covered the appointment cost. Out of concern that people in their small hometown would suspect something, respondent did not buy any baby items for C.H.M. during the pregnancy. In their Facebook messages between February and July 2013, respondent and Wood's primary method of communication, respondent offered Wood his emotional support but never stated that he was actually saving money for the child. Respondent did not give Wood any monetary payments for the minor child's support, and Wood rejected respondent's various offers of financial assistance.

After consistent communication between the two throughout February and March, on 9 April 2013, Wood falsely told respondent the child might not be his, contending she had been sexually assaulted around the time of conception. Thereafter, Wood refused respondent's requests for a paternity test.

Sometime in June, Wood moved to North Carolina to join her husband, and near the end of June (around her due date), Wood stopped communicating with respondent. On 28 June 2013, Wood gave birth to C.H.M. After C.H.M.'s birth, Wood

contacted an adoption agency through a social worker and thereafter provided her affidavit that the pregnancy resulted from a sexual assault by an unknown assailant. Wood and her husband, the legally presumed father, signed relinquishments placing C.H.M. with the adoption agency. Knowing nothing about the possible involvement of respondent, the agency and petitioners, who wished to adopt C.H.M., proceeded with plans to establish a home for the child. On 9 July 2013, petitioners filed the adoption petition and received eleven-day-old C.H.M. into their home, where the child has been cared for during the almost five years of her life.

Though he was aware of Wood's approximate delivery date, respondent did not attempt to contact Wood via Facebook until the end of July, a month after C.H.M.'s birth and following the adoption petition's filing. Several days later, Wood replied and met respondent during one of her return trips to Illinois, at which point he observed she was no longer pregnant. Later that evening, Wood told respondent that she had given birth to the child but that C.H.M. was still at the hospital. Finally, in September 2013, respondent contacted legal counsel about his potential paternal rights and the possibility of a paternity test. Wood told respondent in mid-November about C.H.M.'s adoption, at which time she first informed the adoption agency about respondent. The adoption agency contacted respondent and requested a paternity test. On 4 December 2013, respondent took a paternity test, which confirmed he is the biological father.

On 23 December 2013, more than five months after the adoption petition had been filed, respondent filed his formal objection to the adoption. At the hearing on the matter in April 2014, respondent offered evidence attempting to prove that he met all the statutory requirements for his consent to be necessary, including that he had made reasonable and consistent payments for the support of the minor child, thereby entitling him to object to the adoption. Respondent testified that he had set aside money for C.H.M. in a special location in his room, a "lockbox," in which he placed funds withdrawn from ATM transactions or obtained via "cash back" purchases from Walmart. Respondent provided bank statements from 2012 and 2013, which showed some sporadic withdrawals and general purchases from Walmart, though he provided no records showing the purpose of the withdrawals. Respondent produced no receipts indicating that he received cash back from any Walmart purchases within the statutorily relevant time frame, providing only two Walmart receipts from 2014, more than six months after the statutory deadline. Throughout the hearing, respondent offered no definitive testimony on the timing of his placement of any funds, before or after the adoption petition's filing on July 9, which may have resulted in cash for the lockbox.

The lockbox that respondent produced at the April 2014 hearing then contained $3260. Respondent admitted that the placement of funds in the lockbox was sporadic and was not comprised of an "exact amount each time," as the lockbox contained "just whatever [he] could afford here and there." Because respondent did

not "keep[ ] records [he did not] really know" how much he was placing in the lockbox, though he thought it was somewhere around $100 to $140 per month. Respondent did not provide any records indicating the dates of any deposits or the amount of money in the lockbox before the statutorily relevant date, 9 July 2013. Respondent stated that he made no specific designation "on paper" or elsewhere regarding the money's purpose nor did he confide in anyone about his plan or the lockbox's existence. Though respondent subpoenaed Wood, who was then back in Illinois, so she could testify, Wood did not appear at the hearing, and respondent did not present any witnesses to confirm that he had placed money in the lockbox before the adoption petition was filed.

The trial court noted that whether respondent met the statutory requirements depended on its resolution of what it deemed to be the major factual dispute in the case, "whether Respondent/Father's testimony regarding putting money aside for the minor child and Mrs. Wood is credible." Based on respondent's evidence, the trial court made the following findings:

> 7(h). During Mrs. Wood's pregnancy and after the child's birth Respondent/Father saved money on a consistent and regular basis and designated this money for the minor child. Respondent/Father also testified that he disclosed to Mrs. Wood that he was saving money for the minor child.
>
> . . . .
>
> 13(e)(1). Respondent/Father never provided any actual financial payments to Mrs. Wood or to the minor child either prior to the filing of the petition or since the filing of the petition.

. . . .

13(e)(9). From the time Mrs. Wood told him that she was pregnant with his child and continuing through the time of the instant hearing, Respondent/Father made regular and consistent payments into his lock box/safe for the support of the minor child. These payments were made on a monthly (and sometimes more frequent) basis. While these funds were not deposited into a bank or other financial institution, they were deposited into a safe, and these funds were earmarked for the minor child. No other funds were deposited into this safe.

13(e)(10). At the time of the instant hearing, Respondent/Father had $3,260 in the safe.

13(e)(11). . . . Prior to the filing of the petition, Respondent/Father earned $32,000 a year from [his] employment. His annual earnings are now around $35,000. . . .

13(e)(12). Respondent/Father deposited at least $100 - $140 a month into the safe for the benefit of Ms. Wood and the child, and on average, paid approximately $225 per month in support for the minor child.

Ultimately, the trial court concluded that

Respondent/Father's regular and consistent deposits into the safe were a reasonable method of providing support for the minor child and Mrs. Wood. His testimony regarding monthly deposits into his safe of at least $100 - $140 per month, from the time he learned of Ms. Wood's pregnancy through the instant trial is credible.

Thus, considering evidence of events both before and after the petition filing date of 9 July 2013, the trial court concluded that respondent's "reasonable method" of saving met the requirements of section 48-3-601(2)(b)(4)(II). Moreover, the trial court deemed respondent's lump sum $3260 presented at trial, his uncorroborated

testimony, and his production of general bank statements as having created "a legally sufficient payment record of his efforts to provide support." As such, the trial court determined that respondent's consent was required to proceed with the adoption.

The Court of Appeals affirmed, *In re Adoption of C.H.M.*, ___ N.C. App. ___, ___, 788 S.E.2d 594, 601 (2016), opining that this Court's opinion in *In re Adoption of Anderson*, 360 N.C. 271, 624 S.E.2d 626 (2006), "did not purport to provide an exhaustive list of ways for a father to [comply with the statute], nor did it explicitly impose any sort of specific accounting requirements," *In re C.H.M.*, ___ N.C. App. at ___, 788 S.E.2d at 600. The court also determined that whether respondent had presented adequate evidence to meet the payment prong of the statute is a factual finding as opposed to a legal conclusion, making that ruling subject to a deferential standard of review on appeal. *Id.* at ___, 788 S.E.2d at 600 (citing *In re Adoption of Shuler*, 162 N.C. App. 328, 330-31, 590 S.E.2d 458, 460 (2004)). Thus, the court concluded that by considering all of respondent's evidence, in the form of his bank records, Facebook messages, and uncorroborated testimony about events before and after the adoption petition's filing, respondent produced sufficient evidence showing that he complied with the statutory requirements. *Id.* at ___, 788 S.E.2d at 600. We allowed the adoptive parents' petition for discretionary review to determine whether the trial court correctly concluded that respondent complied with the support payment requirement of section 48-3-601.

Because of a pregnancy's natural timetable and the need of a newborn to have a home, the adoption statutes provide a related window of time by which a putative father must meet clear statutory requirements that establish his paternal rights and make his consent to the adoption necessary. These statutory requirements enumerate objective tests to ensure that all parties involved, including the biological mother, adoptive parents, adoption agency, and the courts, receive adequate notice of the father's intent to assert his paternal rights. One requirement is that a putative father provide reasonable and consistent payments for the support of the biological mother or minor child before, at the latest, the date the adoption petition is filed. Thus, by imposing objective criteria to be met by a deadline consistent with the needs of a newborn child, the statute achieves its overall purpose of providing a final and uninterrupted placement for the child.

It is undisputed that respondent had the burden of proof to establish his compliance with the statutory requirements. Even assuming, without deciding, that respondent's method of placing funds subjectively intended for the minor child in a special location in his home constitutes a statutory "payment," respondent nonetheless failed to prove that such payments met the other statutory criteria. As a matter of law, respondent's evidence was insufficient to establish that he made such payments before the statutory deadline or that each payment was reasonable and consistent in accord with his financial means during the statutory time frame.

In a trial without a jury, a trial court's findings of fact "are conclusive on appeal

if there is competent evidence to support them," though "[f]indings not supported by competent evidence are not conclusive and will be set aside on appeal." *In re Estate of Skinner*, 370 N.C. 126, 139, 804 S.E.2d 449, 457-58 (2017) (alteration in original) (first quoting *Bailey v. State*, 348 N.C. 130, 146, 500 S.E.2d 54, 63 (1998); and then quoting *Penland v. Bird Coal Co.*, 246 N.C. 26, 30, 97 S.E.2d 432, 436 (1957)). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *In re Foreclosure of Bass*, 366 N.C. 464, 467, 738 S.E.2d 173, 175 (2013) (quoting *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004)).

"In distinguishing between findings of fact and conclusions of law, '[a]s a general rule, . . . any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law.'" *State v. Sparks*, 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008) (alterations in original) (quoting *In re Helms,* 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations omitted)). "[F]indings of fact [which] are essentially conclusions of law . . . will be treated as such on appeal." *Sparks*, 362 N.C. at 185, 657 S.E.2d at 658 (second and third alterations in original) (quoting *Harris v. Harris,* 51 N.C. App. 103, 107, 275 S.E.2d 273, 276, *disc. rev. denied,* 303 N.C. 180, 280 S.E.2d 452 (1981)). Moreover, determining whether sufficient evidence supports a judgment is a conclusion of law and will be reviewed as such. *See Styers v. Phillips*, 277 N.C. 460, 464, 178 S.E.2d 583, 586 (1971) ("Whether there is enough evidence to support a

material issue is always a question of law for the court."); *Rountree v. Fountain*, 203

N.C. 381, 382, 166 S.E. 329, 330 (1932) ("Whether there is enough evidence to support

a material issue is a matter of law.").

Chapter 48 of our General Statutes, governing adoption procedures in North

Carolina, seeks

> to establish a clear judicial process for adoptions, to
> promote the integrity and finality of adoptions, to
> encourage prompt, conclusive disposition of adoption
> proceedings, and to structure services to adopted children,
> biological parents, and adoptive parents that will provide
> for the needs and protect the interests of all parties to an
> adoption, particularly adopted minors.

N.C.G.S. § 48-1-100(a) (2017).  Relevant here, section 48-3-601 requires a man who

"may or may not be the biological father" to consent to the adoption of the child if he

> 4. *Before the . . . filing of the petition . . .* has acknowledged
>    his paternity of the minor and
>
>    > . . . .
>
>    II. *Has provided*, in accordance with his financial
>    means, *reasonable and consistent payments for the
>    support of the biological mother during or after the
>    term of pregnancy, or the support of the minor*, or
>    both, which may include the payment of medical
>    expenses, living expenses, or other tangible means
>    of support, and has regularly visited or
>    communicated, or attempted to visit or communicate
>    with the biological mother during or after the term
>    of pregnancy, or with the minor, or with both . . . .

*Id.* § 48-3-601(2)(b)(4)(II) (2017) (emphases added).  Thus, based on the statutorily

prescribed test, the putative father has the burden of proof to show, by the earlier

date of a prebirth hearing or the adoption petition's filing, in addition to the other

statutory requirements, that: (1) he provided payments for the support of the biological mother, minor child, or both; (2) such payments were reasonable in light of his financial means; and (3) such payments were made consistently.

A putative father must present competent evidence showing he complied with each requirement of the statute. If he presents competent evidence that he met some but not all of the statutory requirements, his consent to the adoption is not required.[1] To protect his rights under the objective statutory test, a putative father must fulfill all statutory requirements no later than the filing of the adoption petition. *Id.* § 48-3-601(2)(b)(4) (2017). Any evidence of actions occurring after the adoption petition is filed is irrelevant, and a trial court errs as a matter of law in considering such evidence. *See In re Adoption of Byrd*, 354 N.C. 188, 197-98, 552 S.E.2d 142, 148-49 (2001).

Among the statute's support requirements, first a putative father must present evidence that he has made "payments for the support of the biological mother . . . or . . . the minor, or both." N.C.G.S. § 48-3-601(2)(b)(4)(II). Thus, a putative father must show he has provided real, tangible support through an adequate payment method. *See In re Byrd*, 354 N.C. at 196, 552 S.E.2d at 148; *see*

---

[1] This case did not involve a prebirth hearing under section 48-2-206. Given the facts of this case, this opinion will refer to the relevant deadline as the date the adoption petition was filed. In a case involving a prebirth hearing, however, the statute recognizes the deadline as "the earlier of the filing of the petition or the date of a hearing under G.S. 48-2-206." N.C.G.S. § 48-3-601(2)(b)(4) (2017). Furthermore, the statutory requirements of acknowledgement of paternity and visiting or communicating, or attempting to do so, are not at issue in this appeal.

*also Payment, Black's Law Dictionary* (10th ed. 2014) (defining payment as "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation"). Importantly, a putative father may unilaterally protect his rights, in that the "legislature's deliberate use of 'for' rather than 'to' suggests the payments contemplated by the [support provision] need not always go directly to the mother. So long as the father makes reasonable and consistent payments *for* the support of mother or child, the mother's refusal to accept assistance cannot defeat his paternal interest." *In re Anderson*, 360 N.C. at 279, 624 S.E.2d at 630.

Second, a putative father must present evidence that, during the relevant time period, he has made *reasonable* payments for the support of the biological mother, minor child, or both. *Id.* § 48-3-601(2)(b)(4)(II); *see Reasonable, Black's Law Dictionary* (10th ed. 2014) (defining reasonable as "[f]air, proper, or moderate under the circumstances"). A reasonable payment is calculated based upon the earnings or financial resources of the putative father before the date of the adoption petition's filing.

Third, the statute requires that the putative father demonstrate he has made *consistent* payments. N.C.G.S. § 48-3-601(2)(b)(4)(II). To establish that his payments are consistent under the statute, the putative father must present an objectively verifiable record showing that he consistently made reasonable payments before the statutory deadline. *See The American Heritage Dictionary* 313 (2d coll. ed. 1985)

-13-

(defining "consistent" as "[c]onforming to the same principles or course of action; uniform"); *see also In re Anderson*, 360 N.C. at 279, 624 S.E.2d at 631 (noting that, if the respondent had opened a bank account or established a trust fund, the biological mother's "intransigence would not have prevented him from *creating a payment record through regular deposits into the account* or trust fund in accordance with his financial resources" (emphasis added)).

Our cases recognize these express statutory requirements, as well as the need for a precise payment record to demonstrate that a putative father consistently made reasonable payments before the statutory deadline. In *In re Byrd* the respondent father delivered a $100 money order and baby clothes to a third party for the benefit of the biological mother and child, but the biological mother did not receive the items until after the adoption petition had been filed. 354 N.C. at 191, 552 S.E.2d at 145. The Court recognized that, as evident from the statutory requirements, "[t]he interests of the child and all other parties are best served by an objective test." *Id.* at 198, 552 S.E.2d at 149. Thus, the Court determined that " 'support' is best understood within the context of the statute as actual, real and tangible support, and . . . attempts or offers of support do not suffice." *Id.* at 196, 552 S.E.2d at 148. Moreover, noting the importance of the statutorily imposed deadline, the Court acknowledged that "the statute is clear in its requirements, and respondent must have satisfied the . . . prerequisites . . . prior to the filing of the adoption petition." *Id.* at 194, 552 S.E.2d at 146. The Court concluded that the respondent need not

consent to the adoption proceeding because "the money order and clothes sent to [the biological mother] by respondent . . . arrived too late, as the statute specifically provides for the relevant time period to end at the filing of the adoption petition." *Id.* at 197, 552 S.E.2d at 149.

In *In re Anderson* this Court emphasized the importance of a verifiable payment record to establish that a putative father made reasonable and consistent payments. There the respondent father presented evidence that he saved money and made various offers of support, including offers of cash to the expectant mother at school and an unsuccessful attempt to deliver an envelope containing $100 to her home. 360 N.C. at 273-74, 624 S.E.2d at 627-28. The respondent also hired an attorney who sent a letter to the expectant mother explicitly offering the respondent's financial support, indicating that the respondent had accumulated money to provide assistance to the mother and child. *Id.* at 274, 624 S.E.2d at 628. Despite the respondent's efforts, the Court concluded that, without an objectively verifiable, independent record showing that he had provided real, tangible support payments, the respondent could not establish that any alleged payments were "reasonable and consistent [as] required under the [statute]." *Id.* at 278, 624 S.E.2d at 630. The Court noted that

> [h]ere, respondent could have supplied the requisite support any number of ways, such as opening a bank account or establishing a trust fund for the benefit of [the biological mother] or their child. Had he done so, [the biological mother's] intransigence *would not have prevented him from creating a payment record through*

> *regular deposits into the account or trust fund in accordance with his financial resources.* By doing nothing more than sporadically offering support to [the biological mother], respondent left the support prong of N.C.G.S. § 48-3-601 unsatisfied and himself without standing to obstruct the adoption of [the minor child].

*Id.* at 279, 624 S.E.2d at 630-31 (emphasis added) (citing N.C.G.S. § 48-3-601(2)(b)(4)(II)).

Here respondent's evidence was insufficient as a matter of law to support the trial court's conclusion that respondent complied with the statutory support payment requirements. Assuming, without deciding, that respondent's actions constituted a "payment for the benefit of" the minor child, respondent failed to present any evidence that could show that, before the statutory deadline of 9 July 2013, he made reasonable and consistent payments. Respondent even admitted that any alleged deposits were not "an exact amount," and the lockbox contained "just whatever [he] could afford here and there." Respondent conceded that he did not "keep[ ] records [so he did not] really know" how much money he placed in the lockbox at any relevant time, instead, simply estimating the average amount of money he may have placed in the lockbox during a given month. Thus, respondent's evidence is insufficient as a matter of law to demonstrate that any payments were reasonable based on his income during the relevant statutory time frame.

Moreover, neither respondent's general bank statements nor the lump sum presented at trial in April 2014 provides an objectively verifiable record showing that he consistently made reasonable payments within the statutorily relevant time

period. Because respondent presented no objectively verifiable, independent record to demonstrate his compliance with the statute, the trial court erred as a matter of law in concluding that respondent was required to consent to the adoption.

Significantly, at the hearing, respondent presented comingled financial evidence, which impaired the trial court's ability to identify only the statutorily relevant evidence, namely, that between 11 February 2013, when he was informed of the pregnancy, and 9 July 2013, when the petition was filed. By considering irrelevant evidence, for example, the lump sum of $3260 in the lockbox at the time of the hearing and respondent's earnings, bank records, and receipts spanning the years 2012 to 2014 as a whole, the trial court erred as a matter of law. The Court of Appeals compounded this fundamental error by affirming the trial court's order based on a deferential standard of review, which assumed that respondent's compliance with the statute constituted a purely factual matter, as opposed to a matter of law. That court likewise overlooked the trial court's error in failing to differentiate between relevant and irrelevant evidence in light of the statutory deadline.

The unusual facts of this case cannot overshadow respondent's failure to comply with the statutory requirements to establish his legal rights before the adoption petition was filed. Respondent received undisputed notice that Wood was twenty weeks pregnant with his child in February 2013 and even accompanied her to the first medical appointment which confirmed the timing of the pregnancy and likely date of delivery. Respondent knew Wood was married to another man in a different

state, likely moving to that state, using her husband's insurance for medical care, acting in a deceptive and secretive manner, and denying respondent's requests for a paternity test. Given this knowledge, respondent should have recognized the pressing need to protect his paternal interest and acted accordingly. *See Eubanks v. Eubanks*, 273 N.C. 189, 197, 159 S.E.2d 562, 568 (1968) ("When a child is born in wedlock, the law presumes it to be legitimate.").

Respondent's evidence here failed to demonstrate through an objectively verifiable record that he made the statutorily required reasonable and consistent payments for the support of the minor child before the adoption petition was filed. Because respondent's evidence cannot show he complied with the objective statutory requirements, the adoption should proceed without his consent. Thus, the decision of the Court of Appeals is reversed and this case is remanded to that court for further remand to the trial court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Justice BEASLEY dissenting.

The majority erroneously holds that the evidence in the record is insufficient to support the trial court's ruling that respondent's consent was required before proceeding with the adoption of C.H.M. because of respondent's supposed failure to demonstrate he provided reasonable support within the statutory period. *See* N.C.G.S. § 48-3-601(2)(b)(4)(II) (2017). This conclusion is in direct contradiction of the applicable standard of review: that this Court must defer to the trial court's findings of fact when those findings are based on competent evidence. Here, the trial court made voluminous factual findings establishing that respondent provided the support necessary to protect his parental rights before the filing of the adoption petition. Because there is sufficient evidence in the record to support the trial court's findings of fact and because those findings of fact support its conclusion of law that respondent provided statutorily adequate support prior to the filing of the petition, I respectfully dissent.

Before addressing the substance of the majority's opinion, I provide a more complete recitation of the facts of this case, as well as a description of the trial court's extensive findings, to better characterize respondent's efforts to protect his parental rights and the deception the birth mother inflicted on respondent during her pregnancy and after the birth of C.H.M.

The District Court, Wake County found that respondent, Venson Allen Westgate, the biological father of a child whom petitioners sought to adopt, had a

legal right to require that petitioners obtain his consent to the adoption. Petitioners, Michael and Carolyn Morris, appealed to the Court of Appeals, which unanimously affirmed the trial court.

Respondent, a resident of Illinois, is the biological father of C.H.M.,[1] a child born in North Carolina on 28 June 2013. Respondent and the mother had an on-again, off-again relationship in Illinois, before the mother moved to North Carolina. The mother, who declined to marry respondent, consented to the child's adoption through an agency. Respondent did not consent to the adoption. Petitioners, a Wake County couple, wish to adopt the child. To that end, on 9 July 2013, they filed a Petition for Adoption of a Minor Child in District Court, Wake County. On 23 December 2013, respondent filed a response stating his objection to the adoption.

According to respondent's filing and the trial court's findings, the mother initially told respondent she had been a victim of sexual assault and that she became pregnant as a result. Later, around 25 November 2013, the mother finally told respondent that she had lied about her sexual assault claim. Respondent contended that, although the biological mother finally agreed to respondent's request for a DNA test in November 2013, she told him she had given the child up for adoption without his knowledge. Further, respondent explained that the mother deliberately omitted respondent's name from C.H.M.'s birth certificate, as well as this adoption action,

---

[1] C.H.M. is a pseudonym to protect the identity of the juvenile pursuant to N.C. Rule of Appellate Procedure 3.1.

until approximately 24 November 2013. On 27 November 2013, respondent was served by the adoption agency with a Notice of Pendency of Adoption Proceedings and informed of his right to file a response to the Petition. Later, a DNA test paid for by the adoption agency confirmed that respondent is C.H.M.'s biological father.

Respondent's filing included a motion to dismiss the Petition for Adoption, in which he contended that his "lack of custody of the minor child was unknowing and involuntary" and that he "desires to become involved as the parent to the minor child." Respondent asked the court to find that his consent is required for the adoption and dismiss the Petition for Adoption. After respondent filed his response to the Petition, the matter was transferred from the clerk of court to the district court to determine if respondent's consent is necessary.

The trial court heard the matter from 23 to 25 April 2014 and entered an order in District Court, Wake County on 9 February 2015 finding that respondent's "consent is required to proceed with the adoption." The trial court's order contained extensive findings of fact relating to the nature of the relationship between respondent and the birth mother and respondent's actions during the pregnancy and after the birth of C.H.M.

The court's findings of fact relay that the entire relationship between respondent and the mother remained sporadic and that the mother effectively "controlled the relationship and was the only one to initiate break ups." Respondent did not learn that the mother had given birth until almost one month after C.H.M.

was born. At the mother's request, respondent met with her in Illinois and he then realized the mother was no longer pregnant. The meeting between respondent and the mother happened "over two weeks after the adoption petition was filed and almost one month after [the mother] placed the minor child for adoption."

The trial court also found that "[o]n November 15, 2013 [the mother] . . . finally told [respondent] about the [pending] adoption," at which point he "did everything he was asked to do in order to get a DNA test." At no point did the mother tell respondent that she had placed the child for adoption until she finally agreed to respondent's request for a DNA test in late November 2013. Before this time, she made misrepresentations to respondent that she had been the victim of sexual assault, that "she was raising the minor child with her husband," and that "the baby was in the hospital." The adoption agency did not learn that respondent might be the biological father until the mother confessed to the agency and respondent that she had lied about being sexually assaulted. The agency contacted respondent on 26 November 2013 to advise him of his right to have a paternity test.

In its order, the trial court stated that N.C.G.S. § 48-3-601 sets conditions that, if met, require a putative father's consent to an adoption. That statute reads, in pertinent part, that

> a petition to adopt a minor may be granted only if consent to the adoption has been executed by . . . the biological father of the minor . . . who . . . [1] [b]efore the . . . filing of the petition . . . has acknowledged his paternity of the minor and . . . [2] [h]as provided, in accordance with his

> financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support, and [3] has regularly visited or communicated, or attempted to visit or communicate with the biological mother during or after the term of pregnancy, or with the minor, or with both . . . .

N.C.G.S. § 48-3-601(2)(b)(4) (2017).

The trial court found "that the major fact in dispute is whether [respondent's] testimony regarding putting money aside for the minor child and [the mother] is credible." The court then made findings of fact on the three statutory conditions set out above, correctly concluding as a matter of law that respondent has met the conditions of section 48-3-601 and thus, his consent for adoption is required.

Specifically, on the second issue, the court found that respondent "provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of the pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support." The court found that *during* the mother's "pregnancy and *after* the child's birth [respondent] saved money on a consistent and regular basis and designated this money for the minor child." (Emphasis added.) Moreover, respondent told the mother "that he was saving money for the minor child." The court reasoned that respondent's "never [having] provided any actual financial payments to" the mother or child, was due to the mother's continued refusal to accept such payments; in fact, respondent "wanted to buy items

for the minor child," but the mother "demanded that he not tell anyone about the baby."

In direct contradiction of the majority's conclusion that there was insufficient evidence showing respondent fulfilled the support prong before the filing of the adoption petition, the trial court found that "[f]rom the time [the mother] told him that she was pregnant with his child and continuing through the time of the instant hearing, [respondent] made regular and consistent payments into his lock box/safe for the support of the minor child." The payments of around $100 to $140 "were made on a monthly (and sometimes more frequent) basis." Although respondent did not deposit the funds in a financial institution, he deposited them in a safe and "earmarked [them] for the minor child"; moreover, "[n]o other funds were deposited into this safe." In assessing the credibility of respondent's testimony regarding saving money for the benefit of the mother and C.H.M., the court stated it "gave due regard to all evidence adduced at trial" and that "[n]one of the money [respondent] deposited into the safe prior to the filing of the adoption petition was for legal fees or a DNA test." The court further found that because the mother refused to accept respondent's offers of financial support, his "regular and consistent deposits into the safe were a reasonable method of providing support for the minor child and [the mother]."

Finally, the trial court made additional findings of fact that the mother "intentionally misrepresented to the adoption agency . . . many important facts

relating to the conception of this child," including that "[f]or over four months, [she] intentionally failed to disclose to the agency that [respondent] was a possible father of the child." The court found that all these actions by the mother "prevented [respondent] from having the opportunity to fully exercise his parental rights and obligations." Moreover, the court said that "because of [the mother's] fraudulent and deceptive conduct, [respondent] was prevented from gathering the information necessary to file a custody action prior to the filing of the adoption petition."

On 5 July 2016, the Court of Appeals issued a unanimous opinion affirming the district court. The panel addressed petitioners' specific contention that respondent "failed to satisfy the statutory support requirement imposed by section 48-3-601." *In re Adoption of C.H.M.*, ___ N.C. App. ___, 788 S.E.2d 594, 597 (2016). The panel concluded that, giving due deference to the trial court's determinations of witness credibility and the weight to be given such testimony, "ample evidence . . . support[s] the district court's determination that [respondent] provided reasonable and consistent payments for the support of C.H.M. before the filing of the adoption petition." *Id.* at ___, 788 S.E.2d at 600. Moreover, the panel concluded that the trial court's "determination that [respondent's] regular and consistent deposits into his lockbox were reasonable in accordance with his financial means was adequately supported by competent evidence." *Id.* at ___, 788 S.E.2d at 601. For these reasons, the panel affirmed the district court's order. *Id.*, at ___, 788 S.E.2d at 601. This Court granted discretionary review on 16 March 2017.

The Court of Appeals correctly affirmed the trial court's ruling that respondent's consent was required to adopt C.H.M. "All proceedings under this Chapter must be heard by the court without a jury." N.C.G.S. § 48-2-202 (2017). Therefore, when the trial court acts as fact finder and judge, it must determine "whether there was competent evidence to support its findings of fact and whether its conclusions of law were proper in light of such facts." *In re Adoption of Shuler*, 162 N.C. App. 328, 330, 590 S.E.2d 458, 460 (2004) (quoting *In re Adoption of Cunningham,* 151 N.C. App. 410, 413, 567 S.E.2d 153, 155 (2002) (quoting *In re Norris,* 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983), *cert. denied,* 310 N.C. 744, 315 S.E.2d 703 (1984))). "[E]ven if there is evidence to the contrary," this Court is bound by the trial court's findings of fact when they are supported by competent evidence. *Id.*, at 330, 590 S.E.2d at 460 (citing *In re Adoption of Byrd,* 137 N.C. App. 623, 529 S.E.2d 465 (2000), *aff'd,* 354 N.C. 188, 552 S.E.2d 142 (2001)). "Finally, in reviewing the evidence, we defer to the trial court's determination of witnesses' credibility and the weight to be given their testimony." *Id.* at 331, 590 S.E.2d at 460 (citing *Leak v. Leak,* 129 N.C. App. 142, 150, 497 S.E.2d 702, 706, *disc. rev. denied,* 348 N.C. 498, 510 S.E.2d 385 (1998)); *see State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)) ("In reviewing a trial judge's findings of fact, we are 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge's ultimate conclusions of law.'"); *see also Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) ("[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary." (first alteration in original) (quoting *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008) (ellipsis in original))).

The majority holds that the trial court erred in its decision by finding that respondent has met the support prong of N.C.G.S. § 48-3-601. I would hold that the Court of Appeals was correct to reject petitioners' argument and uphold the trial court's ruling. In order to satisfy the three prongs of the adoption consent statute, N.C.G.S. § 48-3-601,

> [r]espondent must have acknowledged paternity, *made reasonable and consistent support payments for the mother or child or both in accordance with his financial means*, and regularly communicated or attempted to communicate with the mother and child. Under the mandate of the statute, a putative father's failure to satisfy any of these requirements before the filing of the adoption petition would render his consent to the adoption unnecessary.

*In re Byrd*, 354 N.C. 188, 194, 552 S.E.2d 142, 146 (2001) (emphasis added).[2]

"The 'support' required under N.C.G.S. § 48-3-601(2)(b)(4)(II) is not specifically defined"; "however, [such] 'support' is best understood within the context of the statute as *actual, real and tangible support*, and . . . attempts or offers of support do

---

[2] In this case, the only part of the consent statute at issue is the "support" prong.

not suffice." *Id.* at 196, 552 S.E.2d at 148 (emphasis added). For instance, as recognized by this Court five years later, the following facts in *In re Byrd*, this Court's seminal case on this issue, were insufficient to establish actual, real, and tangible support:

> [T]he paternal grandmother [in *In re Byrd*] offered O'Donnell, the expectant mother, a place to live and help with medical bills and other costs, all of which O'Donnell declined. On the day O'Donnell gave birth, the putative father purchased a $100 money order for her; however, the money order did not reach O'Donnell until after the petitioners had filed for adoption.

*In re Adoption of Anderson*, 360 N.C. 271, 276-77, 624 S.E.2d 626, 629 (2006) (discussing and citing *In re Byrd,* 354 N.C. at 190-91, 552 S.E.2d at 144-45). This Court has stated that "attempts or offers of support, made by the putative father or another on his behalf, are not sufficient for purposes of the statute." *In re Byrd*, 354 N.C. at 197, 552 S.E.2d at 148.

Similarly, in *In re Adoption of Anderson* this Court held that numerous offers of support by the father were insufficient to show support under the adoption consent statute. 360 N.C. at 278-79, 624 S.E.2d at 630-31. Furthermore, *In re Anderson* presented additional facts showing that the putative father hired an attorney to send a letter offering financial support to the birth mother. *Id.* at 279, 624 S.E.2d at 630. In these circumstances, this Court held that the father in *In re Anderson* had not satisfied the support prong. *Id.* at 278-79, 624 S.E.2d at 630-31. In doing so, the Court in *In re Anderson* stated that "our resolution of the instant case does not grant

biological mothers the power to thwart the rights of putative fathers." *Id.* at 279, 624

S.E.2d at 630. Rather, the Court upheld the legislative purpose of requiring "putative

fathers to demonstrate parental responsibility with reasonable and consistent

payments '*for* the support of the biological mother.'" *Id.* at 279, 624 S.E.2d at 630

(quoting N.C.G.S. § 48-3-601(2)(b)(4)(II) (2005)). Going on to explain the meaning of

"for" in the context of the case, the Court concluded that

> *respondent could have supplied the requisite support any*
> *number of ways, such as opening a bank account or*
> *establishing a trust fund* for the benefit of [the mother] or
> their child. Had he done so, [the mother's] intransigence
> would not have prevented him from creating a payment
> record through regular deposits into the account or trust
> fund in accordance with his financial resources.

*Id.* at 279, 624 S.E.2d at 630-31 (emphasis added).

In contrast, the Court of Appeals upheld a trial court's finding that the father's

consent was required in *In re Adoption of K.A.R.*, and this Court denied review. 205

N.C. App. 611, 613, 696 S.E.2d 757, 759 (2010), *disc. rev. denied*, 365 N.C. 75, 706

S.E.2d 236 (2011). In that case, the birth mother was eighteen years old, and the

father was twenty years old. *Id.* at 612, 696 S.E.2d at 759. The father continually

expressed a desire to participate in the birth mother's and child's lives, even

attending prenatal classes and doctor visits until the birth mother requested that he

not accompany her any longer. *Id.* at 612-13, 696 S.E.2d at 759. When the birth

mother became pregnant, the father was unemployed and was living with his parents.

*Id.* at 612-13, 696 S.E.2d at 759. Before the child was born, the father found a job,

and once he had an income, he purchased items for the baby "such as: a car seat, a baby crib mattress, and clothing worth over $200.00." *Id.* at 613, 696 S.E.2d at 759. The trial court concluded that the father provided reasonable and consistent support in accordance with his financial means as required under the statute, and the Court of Appeals affirmed the trial court's conclusion. *Id.* at 613, 696 S.E.2d at 759.

In upholding the trial court's ruling in *In re K.A.R.*, the Court of Appeals discussed the significance of the language in N.C.G.S. § 48-3-601(2)(b)(4)(II) that "obliges putative fathers to demonstrate parental responsibility with reasonable and consistent payments '*for* the support of the biological mother [ . . . or the support of the minor, or both, which may include . . . other tangible means of support].' " *Id.* at 617, 696 S.E.2d at 761 (alterations in original) (quoting *In re Anderson*, 360 N.C. at 273, 624 S.E.2d at 627(quoting N.C.G.S. § 48-3-601(2)(b)(4)(II) (2005))). The Court of Appeals concluded that the deliberate "use of the word 'for' rather than 'to' suggests the legislature wanted to ensure that a putative father, who makes reasonable, consistent payments of support, could preserve his parental rights even where the biological mother refuses direct assistance." *Id.* at 617, 696 S.E.2d at 761. The Court of Appeals further explained that, in codifying N.C.G.S. § 48-3-601(2)(b)(4)(II), "the General Assembly sought 'to protect the interests and rights of men who have demonstrated paternal responsibility and to facilitate the adoption process in situations where a putative father for all intents and purposes has walked away from his responsibilities to mother and child . . . .' " *Id.* at 615, 696 S.E.2d at 760 (alteration

in original) (quoting *In re Byrd*, 354 N.C. at 194, 552 S.E.2d at 146). The statute strikes a balance between these competing interests by ensuring a putative father can maintain his parental interest and by preventing a mother from unilaterally controlling the adoption process, while also allowing for certainty when a child is put up for adoption. *See id.* at 615, 696 S.E.2d at 760 (" '[A]n objective test that requires unconditional acknowledgment and tangible support' best serves the interests of all parties as well as the child.") (alteration in original) (quoting *In re Byrd*, 354 N.C. at 198, 552 S.E.2d at 149)).

As distinguished from the fathers in *In re Byrd* and *In re Anderson*, the Court of Appeals reasoned that the father in *In re K.A.R.* "independently provided items of support for the child, even after his efforts to provide support and assistance directly to the mother were rebuffed." *Id.* at 617, 696 S.E.2d at 761. By obtaining tangible items, like clothing and a car seat, the father offered reasonable support based on his financial means, in compliance with N.C.G.S. § 48-3-601(2)(b)(4)(II). The Court of Appeals explained that this Court in "*In re Anderson* suggested one way a father could provide support independently of the mother; the father in the instant case, as determined by the trial court, has shown another." *Id.* at 617, 696 S.E.2d at 762.

Turning to this case, *In re K.A.R.* helps to support the trial court's conclusion that respondent provided the requisite support under N.C.G.S. § 48-3-601(2)(b)(4)(II). In fact, it is hard to distinguish the present facts from those of *In re K.A.R.* Unlike *In re Byrd* and *In re Anderson*, in which the respondents only made offers or

attempted offers, here the trial court found that respondent actually set aside money for the benefit of C.H.M., similar to the father in *In re K.A.R.* who actually purchased items for the baby. While the majority in this case discounts respondent's evidence as "insufficient to establish the [respondent] made such payments before the statutory deadline," it is clear from the trial court's findings and this Court's precedent that respondent has indeed fulfilled the statutory requirement. Specifically, the majority finds respondent's evidence incompetent to show both that he fulfilled the support requirement before the deadline and that respondent made *reasonable* payments as required by N.C.G.S. § 48-3-601(2)(b)(4)(II). The majority is able to come to this conclusion not because respondent's evidence was in fact incompetent or insufficient, but because the majority takes issue with the type of support respondent provided—namely, saving cash in a lockbox. This is evident from the majority's requirement that respondent provide a "precise payment record." The majority makes much ado about respondent's inability to recall the exact amounts placed in the lockbox, respondent's lack of records, and respondent's lack of knowledge as to specific dates of his deposits. Ultimately, however, as already addressed earlier in this opinion, all of the majority's contentions are directly addressed and disproved by the trial court's competent findings of fact based on respondent's own testimony, bank statements, and cash back withdrawal receipts.

Furthermore, there are no specific requirements in the consent statute relating to the form that "support" must take. While the father's actions in *In re K.A.R.* are

similar in kind to respondent's actions of saving money in a lockbox for the benefit of the child, our case law demonstrates a number of ways to satisfy the support requirement. While the *In re Anderson* opinion specifically referred to bank accounts and trust funds—which surely are methods that would provide a "precise payment record"—these were only examples of possible ways to provide support. *See In re Anderson*, 360 N.C. at 279, 624 S.E.2d at 630-31. Specifically, this Court stated in *In re Anderson* that

> respondent could have supplied the requisite support *any number of ways, such as* opening a bank account or establishing a trust fund for the benefit of [the mother] or their child. Had he done so, [the mother's] intransigence would not have prevented him from creating a payment record through regular deposits into the account or trust fund in accordance with his financial resources.

*Id.* at 279, 624 S.E.2d at 630-31 (emphasis added). Therefore, the statute contemplates that some putative fathers, because of factors such as limited financial means, type of employment, and lack of access to banks, will not necessarily have the ability to establish bank accounts or trust funds.

Moreover, the plain language of N.C.G.S. § 48-3-601(2)(b)(4)(II) requires only that the putative father "[h]as provided, in accordance with his financial means, reasonable and consistent payments for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both." No language indicates what form a "payment" must take to satisfy the support prong, what method of recordkeeping (if any) must be used, or if certain forms of payment are required

over others. Rather, this Court has determined that to satisfy the support prong, the putative father must provide "actual, real and tangible support, and . . . attempts or offers of support do not suffice." *In re Byrd*, 354 N.C. at 196, 552 S.E.2d at 148. As this Court has not defined the form that "actual, real and tangible support" must take, the assessment of what qualifies as actual support is a question for the trial court to determine when considering all the evidence. It is not the business of this Court to reweigh the factual evidence in the record, and that is exactly what the majority has done here.

Consequently, based on the specific evidence presented in this case, I would hold that the act of saving money in a lockbox, just as purchasing baby items in *In re K.A.R.*, is a valid method of providing support to the birth mother or child. In addition, unlike what the majority contends, the actions by respondent here, as well as those of the respondent in *In re K.A.R.,* establish reasonable support commensurate with their financial means as contemplated by N.C.G.S. § 48-3-601(2)(b)(4)(II). Possibly, the only distinguishing characteristic between the father's actions in *In re K.A.R.* and respondent's actions here is that the purchased baby items are more readily targeted to directly benefit the child, whereas cash in a lockbox could be used for a myriad of purposes. Yet, despite the differing characteristics between the contributions made on behalf of the child, applying the proper standard of appellate review, this Court must defer to the trial court's findings of fact when those facts are based on competent evidence. Here, the trial court made extensive findings

of fact,[3] ultimately finding that respondent made reasonable and consistent payments based on his financial means and earmarked the savings for the benefit of the child.[4]

Finally, this Court has been careful to stress that a birth mother should not be able to completely control the adoption process. *See In re Byrd*, 354 N.C. at 196, 552 S.E.2d at 148 ("We also believe that the General Assembly did not intend to place the mother in total control of the adoption to the exclusion of any inherent rights of the biological father."); *see also In re Anderson*, 360 N.C. at 279, 624 S.E.2d at 630 ("So long as the father makes reasonable and consistent payments *for* the support of mother or child, the mother's refusal to accept assistance cannot defeat his paternal interest."). This Court's decisions in *In re Byrd* and *In re Anderson* recognize that North Carolina's adoption consent statute is flexible enough to allow for a putative father to maintain his parental rights despite the birth mother's intransigence. In the present case, the birth mother essentially attempted to "thwart" respondent's efforts to provide support. As the trial court found in this case, respondent provided adequate support commensurate with his financial means. The majority's decision— reading into the statute additional requirements of record-keeping or formal accounting—is simply not supported by statute or case law. Accordingly, I would

---

[3] The trial court relied on, *inter alia*, respondent's own testimony, copies of conversations via social media between respondent and the birth mother, bank statements and receipts, and testimony from the adoption agency's personnel.

[4] The trial court noted that its findings were limited by the mother's failure to respond to a subpoena to appear at the hearing. The court noted that the mother was then living out of state and was not subject to the court's power to enforce the subpoena.

affirm the decision of the Court of Appeals, which affirmed the trial court's order requiring the father's consent for C.H.M.'s adoption.

Justices HUDSON and MORGAN join in this dissenting opinion.